DAVIDS v DAVIS

Docket No. 107382. Submitted May 2, 1989, at Lansing. Decided
     August 7, 1989.

Irving G. Snyder, Jr., a real estate developer, planned to develop
     a condominium project on the northeast shore of Sanford Lake
     in Midland County. In 1976, Snyder purchased two parcels of
     property (parcels 1A and 1B) from Fred G. Davis, Sr., and his
     wife, Marie O. Davis. The signing of the deed was witnessed by
     Fred G. Davis, Jr. Davis, Sr., told Snyder that the adjacent
     property to the south belonged to Lawrence A. Davids. Davids
     received the property from Olive K. Touse and her estate. In
     1986, Davids conveyed his property (parcel 2) to Snyder by
     quitclaim deed. At that time, the title insurance commitment
     stated that a portion of parcel 2 was never properly conveyed
     to Davids and that several individuals, including Fred G. Davis,
     Sr., still held a title interest in the property. Fred G. Davis, Sr.,
     had died in 1984, and the title insurance company required
     proof of the identities of the heirs of the estate of Fred G.
     Davis, Sr., and that those heirs convey their interest in the
     property to Davids. Maria T. Davis, daughter-in-law of Fred G.
     Davis, Sr., refused to sign a quitclaim deed relinquishing her
     interest in parcel 2 on the basis that a 1912 guardian's deed
     purported to transfer parcel 2 to Daniel N. Davis, the father of
     Fred G. Davis, Sr., and that the deed established ownership in
     the Davis family. Lawrence A. Davids, who had acquired the
     property from Touse in 1955, filed suit against Fred G. Davis,
     Jr., individually and as personal representative of the estate of
     Fred G. Davis, Sr., deceased, and Marie O. Davis and Maria T.
     Davis in Midland Circuit Court seeking to quiet title to parcel
     2. The Davises filed a third-party complaint against Irving G.
     Snyder, Jr., and Diamond S, Inc., which is wholly owned by
     Snyder, seeking a decree quieting title in parcels 1A, 1B,and 2,
     alleging that the 1976 deed from Fred G. Davis, Sr., had been
     altered. Following trial, the court, Tyrone Gillespie, J., held

REFERENCES

Am Jur 2d, Actions §§ 56, 58 et seq.; Adverse Possession §§ 8 et seq.;
     Appeal and Error §§ 702, 842; Costs §§ 10 et seq.
See the Index to Annotations under Adverse Possession.

that Davids owned parcel 2 in fee simple by adverse possession and that the Davises' third-party complaint was frivolous and awarded Snyder and Diamond S, Inc., $5,116.10 in costs and fees. The Davises appealed.

The Court of Appeals *held:*

1. The trial court did not err in finding that the Davises did not have record title to parcel 2. The court correctly ruled that the recorded titles of the parties were deficient to evidence a fee simple interest in the property and decided the case on the basis of the parties' relative possessory interests.

2. The possession of parcel 2 by Davids was actual, visible, open, notorious, exclusive, continuous, uninterrupted for the statutory period of fifteen years, and under cover of a claim of right. The trial court's finding that Davids had established ownership by adverse possession is not clearly erroneous.

3. The trial court did not err in determining that the third-party claim of the Davises was frivolous and in awarding costs to third-party defendants.

Affirmed.

1. QUIETING TITLE — APPEAL — FINDINGS OF FACT.

The Court of Appeals in cases involving issues of quieting title will give great weight to the findings of fact made by the trial court and will not disturb those findings unless convinced that it would have reached a different result had it been in the position of the lower court.

2. ADVERSE POSSESSION — EVIDENCE — HOSTILE POSSESSION.

Adverse possession of land must be established by clear and cogent proof of actual, visible, open, notorious, exclusive, continuous, uninterrupted, hostile possession under a claim of right for the statutory period of fifteen years; possession is hostile where it manifests an intent to claim title to a visible, recognizable boundary, regardless of the boundary line (MCL 600.5801[4]; MSA 27A.5801[4]).

3. ADVERSE POSSESSION — EVIDENCE.

The determination of what acts or uses are sufficient to constitute adverse possession depends upon the facts in each case and to a large extent upon the character of the premises.

4. COSTS — FRIVOLOUS ACTIONS.

Attorneys have an affirmative duty to conduct a reasonable inquiry into the viability of a pleading before it is signed; the reasonableness of the inquiry is determined by analysis under an objective standard and, if a court finds, on motion of a party,

that an action or defense is frivolous, costs shall be awarded to the injured parties (MCL 600.2591; MSA 27A.2591; MCR 2.114[F], 2.625[A][2]).

5. ACTIONS — REASONABLENESS OF ACTIONS.
    An objective standard of reasonableness is appropriate in determining whether a party had no reasonable basis to believe that the facts underlying his legal position were in fact true (MCL 600.2591; MSA 27A.2591).

*Whittaker & Maddox* (by *R. Thomas Whittaker*), for plaintiff.

*Wesley P. Hackett, Jr.,* for defendants.

Before: WAHLS, P.J., and WEAVER and CAVANAGH, JJ.

WAHLS, P.J. In this action to quiet title in a parcel of undeveloped property situated in Jerome Township, Midland County, defendants appeal as of right from an order of the Midland Circuit Court declaring plaintiff owner of the property by adverse possession and awarding costs to third-party defendants incurred in connection with a third-party complaint filed by defendants and determined by the circuit court to have been frivolous under MCL 600.2591(3)(a)(ii); MSA 27A.2591(3)(a)(ii). We affirm.

The record reveals that Irving G. Snyder is a real estate developer who planned to develop a condominium project on the northeast shore of Sanford Lake in Jerome Township. In order to obtain the land necessary to begin the project, Snyder purchased various parcels of property in the area over a period of years. In 1976, after a year of negotiations, he purchased two parcels, which will be referred to as parcels 1A and 1B, from Fred G. Davis, Sr., and his wife, Marie O. Davis. The parcels were conveyed by warranty

deed at Snyder's request to Peter H. Hattersley and Darlene Hattersley of San Francisco, California, and were subsequently conveyed by the Hattersleys to Snyder. The deed conveying the property from Fred G. Davis, Sr., to the Hattersleys was witnessed by Fred G. Davis, Jr., and a realtor, William T. Jung. Snyder testified that, just prior to the purchase of these parcels, Davis, Sr., had taken him in a Jeep for a tour of the property and that during the tour, upon seeing a path leading onto the property which was blocked by a chain stretched between two poles, was told by Davis, Sr., that the property just south of the blocked path belonged to Lawrence A. Davids. Davids is the plaintiff in this case and the property just south of the blocked path is a parcel of land which will be referred to as parcel 2. At trial, Davids testified that the two poles and chain blocking the path, along with a wire fence which ran along the length of the northern border of parcel 2 and the southern border of parcel 1B, were installed by him in 1959 or 1960. Davids explained that in 1955 he received a deed from Olive K. Touse conveying to him a portion of parcel 2 and that in 1961, after Touse's death, he received from her estate a second deed conveying to him a further interest in the property. It was Davids' opinion that these two deeds vested him with ownership of all of parcel 2.

In 1978, Davids deeded parcel 2 to Richard C. Learman in two separate transactions, and in 1984 Learman reconveyed the property to Davids. In 1986, Davids conveyed by quitclaim deed most of parcel 2 to Snyder, and a month later, Snyder conveyed the property by quitclaim deed to Diamond S, Inc., which is wholly owned by Snyder. At trial, Snyder acknowledged that in the title insurance commitment regarding parcel 2 issued by

Superior Abstract it was stated that a portion of the parcel being conveyed by Davids was never properly conveyed to Davids and that, in order to secure title insurance, a proper conveyance of the portion of the parcel in issue would have to be obtained from several named individuals who still apparently held a title interest in the property. One of those individuals was Davis, Sr. Since the latter had died in 1984, the title insurance company required that proof be submitted regarding the identities of the heirs of Davis, Sr., and that those heirs convey their interest in the property to Davids.

Prior to this time, but after Davis, Sr., had died and his estate was being probated, Maria T. Davis, the wife of Fred G. Davis, Jr., and thus the daughter-in-law of Davis, Sr., was asked by the attorney handling the probate of the estate to sign a quitclaim deed relinquishing her interest in the disputed portion of parcel 2. She was told, she testified, that "I may as well sign for this sliver of land, because we didn't own it anyhow." She refused to sign the quitclaim deed and instead, after researching the matter, discovered a 1912 deed in which the disputed portion of land was conveyed by Fred Allswede, as guardian of the estate of John W. H. Brooks, an incompetent person, to Daniel N. Davis, the father of Fred G. Davis, Sr. When Davids filed the present action to quiet title in the property against Fred G. Davis, Jr., individually and as the personal representative of the estate of Fred G. Davis, Sr., Marie O. Davis, the widow of Fred G. Davis, Sr. and Maria T. Davis, the latter parties contended that the 1912 deed established ownership of the property in the Davis family and that that ownership had never been conveyed or otherwise forfeited.

In 1987, the Davises filed a third-party com-

plaint against Snyder and Diamond S, Inc., seeking a decree quieting title in parcels 1A, 1B, and 2 and requesting the issuance of a restraining order forbidding construction or the filing of building permits by Snyder or Diamond S, Inc. The Davises alleged that the 1976 deed of Fred G. Davis, Sr., to the Hattersleys had been altered, that the Hattersleys had no knowledge of the deed between themselves and Snyder, and that the Hattersleys had never delivered a deed to Snyder. The sole support for the third-party complaint was the claim of Maria T. Davis that the signature of her father-in-law on the 1976 deed was not authentic. She continued in this assertion even though her own handwriting expert opined that the signature was genuine, even though she knew that the deed and its supporting documentation had been recorded for over ten years, and even though her own husband had signed the deed itself as a witness. Construction or the filing of building permits by Snyder or Diamond S, Inc., was enjoined by the trial court, which, however, ruled that such action could be taken if Snyder and Diamond S, Inc., posted a $10,000 bond running to the Davises. The bond was posted and the restrictions were removed.

After a trial was conducted on November 18 and 19, 1987, the circuit court issued a seventeen-page opinion on December 1, 1987, in which it held, in pertinent part, that Davids owned parcel 2 in fee simple by adverse possession. Moreover, in a judgment issued on February 24, 1988, the circuit court awarded costs and fees to Snyder and Diamond S, Inc., on the Davises' third-party complaint on the ground that that complaint was frivolous under MCR 600.2591(3)(a)(ii); MSA 27A.2591(3)(a)(ii).

On appeal, the Davises raise three arguments.

First, they contend that "the trial judge erred in finding that defendants/appellants did not have record title to parcel 2." We disagree.

The trial court found that the recorded titles relied upon by the parties were deficient to evidence a fee simple interest in the disputed property. Because of this finding, the court decided the case on the basis of the parties' relative possessory interests. Davids' title was found insufficient because the disputed portion of parcel 2, although not specifically exempted in his 1961 deed from the estate of Olive K. Touse, could not have been conveyed in that document since that deed was itself based on a conveyance which specifically exempted that portion of the parcel. The Davises' title to the disputed portion of parcel 2 was also found to be insufficient by the trial court because, even assuming that Daniel N. Davis, the father of Fred G. Davis, Sr., held the property under the 1912 deed from Fred Allswede, there was absolutely no evidence produced at trial showing that Davis, Sr., was the sole heir of his father. Regarding this issue, the following statements were made at trial by the court and counsel for the Davises:

> [*The Court:*] We have a deed here from John Brooks to Dan Davis. We have no connection between the Dan Davis and Fred Davis. We have to connect those up. There wasn't—there apparently wasn't any title papers, but there was obviously some probate papers that tied them, and I don't have any of that.
>
>           \*     \*     \*
>
> [*Mr. Kahn* (counsel for the Davises):] Now, as far as . . . Fred Davis, Senior, is concerned he was one of the heirs of Dan Davis, his father. And the title of Dan Davis never having been conveyed away as the [sic] it affects the subject property, is in my opinion the evidence that Fred Davis is the—is one

of the heirs and as such inherited whatever interest Dan Davis had.

*The Court:* I can't go with you on that. You're going to have to tie it together.

*Mr. Kahn:* Now, the title to this property has to be in some name. If it was in Daniel Davis' name to begin with, then it would be—going to his heirs. There was never any conveyance from Daniel Davis of the subject property to anybody.

*The Court:* Where did he die?

*Mr. Kahn:* When?

*The Court:* Yes. Where and when did he die? Is there a probate record on his death?

*Mr. Kahn:* 1944. He died in 1944.

*The Court:* Well, it's up to you. I'm just probably speculating here without having really studied the title, but I'm a little mystified until that link is put together.

You have the opportunity to do that, and that would then get down to one simple question. That would be: What is the adverse possession of rights? And that's one I probably will take under advisement.

*Mr. Kahn:* Okay.

The other thing I want to say in response also is that I'm satisfied that real estate vests in the heirs upon the death of the deceased. And I think that's still a rule. Always has been. And whether or not it was included in any probate proceedings, it is my opinion—and I will furnish the Court some authority on that.

*The Court:* Well, I don't argue that point too much. But the point you do need a determination of [is] who the heirs are. And that's best done by probate proceedings. If you don't have probate proceedings, it still has to be shown who the heirs are.

*Mr. Kahn:* Well, from the standpoint of who the heirs are, I understand the need for that.

*The Court:* All right.

*Mr. Kahn:* Thank you.

In its December 1, 1987, opinion, the trial court, in addressing the issue of the Davises' lack of title to the portion of parcel 2 at issue in this case, stated:

> On the other hand, the defendants' title was also infirm. Their claim arises from a guardian's deed dated May 12, 1912 from Fred Allswede, guardian of the estate of John W. H. Brooks, an incompetent, to Daniel N. Davis which described the property conveyed as the north 29.7 acres of government lot 2, T15N, R1W, Jerome Township, Midland County, Michigan, subject to a contract to J.H. Barth which Davis agreed to carry out. This deed is recorded in liber 87 at page 446, Midland County records.
>
> There was no showing on trial that J.W. Brooks had any interest in the property nor was his marital status shown. The defendants claim as heirs of Daniel N. Davis. Fred G. Davis, Sr., whose estate is a defendant, was a son of Daniel Davis. He, however, had two sisters whose interests were unaccounted for. Also, Daniel N. Davis' marital status at time of his death was not shown. Marie O. Davis, Fred G. Davis, Jr. and Maria T. Davis claim as heirs of Fred Davis. Fred Davis, Sr. would have had a ⅓ interest in the property if, in fact, J.W. Brooks passed good title and the wife of Daniel Davis predeceased him. Marie O. Davis would have a widow's rights in the ⅓ owned by Fred Davis, Sr. Fred Davis, Jr. would have a fractional interest along with his brother. Maria T. Davis would have only a dower interest in Fred Davis, Jr.'s interest.

The Davises' failure to have established a title interest in the disputed property is obvious. They showed that the property was conveyed to the father of Fred G. Davis, Sr., Daniel N. Davis, in 1912, but failed to establish what, if any, interest in the property devolved to Fred G. Davis, Sr.,

upon his father's death. Counsel acknowledged at trial the necessity of establishing "who the heirs are" of Daniel N. Davis, but simply failed to accomplish that which he acknowledged. This Court, in cases involving issues of quieting title, will give great weight to the findings of fact made by the trial court and will not disturb those findings unless convinced that it would have reached a different result had it been in the position of the lower court. *Connelly v Buckingham,* 136 Mich App 462, 467; 357 NW2d 70 (1984), lv den 422 Mich 854 (1985); *West Bay Exploration Co v Amoco Production Co,* 148 Mich App 197, 200; 384 NW2d 407 (1986), remanded on other grounds 425 Mich 879; 389 NW2d 865 (1986). See also MCR 2.613(C). In this case, we agree with the trial court that the Davises did not have record title to the disputed portion of parcel 2.

Second, the Davises contend that, "notwithstanding the matter of record title, the trial court erred in finding title to parcel 2 in plaintiff appellee by adverse possession." We disagree.

In *Connelly, supra,* pp 467-468, this Court summarized some of the principles of law applicable in adverse possession cases in Michigan:

> In Michigan, adverse possession must be "established by clear and cogent proof of possession that is actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of 15 years, hostile and under cover of a claim of right". *Burns v Foster,* 348 Mich 8, 14; 81 NW2d 386 (1957); *Rose v Fuller,* 21 Mich App 172, 175; 175 NW2d 344 (1970), lv den 384 Mich 751 (1970). See also MCL 600.5801(4); MSA 27A.5801(4). When a landowner takes possession of land of an adjacent owner, with the intent to hold to the true line, the possession is not hostile and adverse possession cannot be established. *Warner v Noble,*

286 Mich 654; 282 NW 855 (1938); *Dubois v Karazin,* 315 Mich 598; 24 NW2d 414 (1946); *Ennis v Stanley,* 346 Mich 296; 78 NW2d 114 (1956); *Kettunen v Torreano,* 59 Mich App 652; 230 NW2d 14 (1975), lv den 394 Mich 791 (1975). The corollary to this rule provides that, when the possession manifests an intent to claim title to a visible, recognizable boundary, regardless of the true boundary line, the possession is hostile and adverse possession may be established. *Gregory v Thorrez,* 277 Mich 197; 269 NW 142 (1936); *Yatczak v Cloon,* 313 Mich 584; 22 NW2d 112 (1946); *Dubois v Karazin,* 315 Mich 598; 24 NW2d 414 (1946); *Walker v Bowen,* 333 Mich 13; 52 NW2d 574 (1952). Such is the law in every jurisdiction which adheres to the principle that the intention of the parties is the dispositive test in determining whether land is held adversely. See 80 ALR2d 1161, §§ 3-4, pp 1174-1181.

See also *Connor v Detroit Terminal R Co,* 183 Mich 241, 249-250; 150 NW 115 (1914); *Rozmarek v Plamondon,* 419 Mich 287, 292-295; 351 NW2d 558 (1984); *Strong v Detroit & M R Co,* 167 Mich App 562, 568-569; 423 NW2d 266 (1988); *McQueen v Black,* 168 Mich App 641; 425 NW2d 203 (1988).

We do not hesitate in this case to agree with the trial court that the possession of parcel 2 by Davids was actual, visible, open, notorious, exclusive, continuous, uninterrupted for the statutory period of fifteen years, and under cover of a claim of right.

Generally, the occasional or periodic entry upon land does not constitute actual possession. *Ennis, supra,* p 301, quoting *McVannel v Pure Oil Co,* 262 Mich 518, 525; 247 NW 735 (1933). However, it has been acknowledged that the "[d]etermination of what acts or uses are sufficient to constitute adverse possession depends upon the facts in each case and to a large extent upon the character of

the premises," *Burns, supra,* p 14, and that "[i]t is a well-recognized rule in Michigan that the acts required to support a finding of adverse possession are sufficient if those acts are consistent with the character of the premises in question," *Ogorek v Loisell,* 33 Mich App 245, 248; 189 NW2d 738 (1971), lv den 385 Mich 766 (1971). The premises in question in this case is a tract of wild, undeveloped, landlocked realty having only one path as a means of demarcated ingress and egress. Testimony revealed that Davids had placed posts on each side of the path on the boundary between parcels 1B and 2, strung a chain across the posts and padlocked the chain to one of the posts, put up a wire fence around most of parcel 2, posted "private property" and "no trespassing" signs, and cut trees and hunted birds on the property. These acts are consistent with the wild, undeveloped character of the premises and constitute the actual possession of the land.

Moreover, it is apparent that Davids' possession of parcel 2 was so open, visible, and notorious as to raise the presumption of notice to the world that the right of the true owner had been intentionally invaded. *Burns, supra,* p 15. As already noted, Davids had erected fences and posted signs on the property. He also was assessed, and paid, the taxes on the property since he first acquired an interest in the land in the 1950s. See *Monroe v Rawlings,* 331 Mich 49, 51-52; 49 NW2d 55 (1951); *Burns, supra,* p 15; *Bachus v West Traverse Twp,* 107 Mich App 743, 748-749; 310 NW2d 1 (1981), remanded to circuit court 412 Mich 870; 313 NW2d 282 (1981), remanded to Court of Appeals 413 Mich 914; 320 NW2d 55 (1982); *Bachus v West Traverse Twp (On Remand),* 122 Mich App 557; 332 NW2d 535 (1983). Furthermore, Davids testified that during the 1960s he approached Davis, Sr., and asked

him to sell a right-of-way across parcels 1A and 1B to permit access across those parcels onto parcel 2 and that Davis, Sr., refused to do so. Finally, Snyder testified that Davis, Sr., had told him in 1976 that Davids owned parcel 2.

In light of the open acts of ownership exercised over the property by Davids and the conspicuous absence of any testimony evidencing that Davis, Sr., had made any use of parcel 2, we believe there is little doubt indeed that Davids exclusively possessed the property. The testimony of Maria T. Davis that she and members of her family went onto parcel 2 when they visited Davis, Sr., does not reduce or affect the considerable degree of exclusivity over the property exercised by Davids.

Davids' use of parcel 2 was also shown to have been continuous and uninterrupted for more than the statutory fifteen-year period. MCL 600.5801; MSA 27A.5801. In 1955 he received a deed for part of the parcel from Olive K. Touse, and in 1961 he received a deed for the remainder of the parcel from the estate of Mrs. Touse. His overt acts of possession of the land began as early as 1959 or 1960 when he erected a wire fence and chain gate. Portions of the chain fence and gate were still in place, according to Snyder, when he toured parcel 1B with Davis, Sr., in 1976 and were still partially in place at the time of trial, according to Davids.

It is also obvious that Davids' hostile acts, performed without permission being either sought or given, of posting signs and erecting a fence and gate were inconsistent with the rights of anyone who may have claimed ownership in the property and would certainly have prompted and entitled anyone with an ownership interest to have taken legal redress against Davids as a trespasser and intruder. *Mumrow v Riddle,* 67 Mich App 693, 698; 242 NW2d 489 (1976).

Finally, the deeds conveyed to Davids by Olive K. Touse for parcel 2, as well as Davids' long-time payment of the taxes on the land, make clear that Davids possessed the land "under cover of a claim of right." *Connelly, supra,* pp 467-468.

Accordingly, since this Court is unable to conclude that the findings of fact made by the trial court are clearly erroneous or that we would have arrived at a different result, we affirm the trial court's order declaring Davids the owner in fee simple of parcel 2 by adverse possession.

Third, the Davises contend that "the trial judge erred in determining that the third-party claim was 'frivolous' and in awarding costs therefor" pursuant to MCL 600.2591(3)(a)(ii); MSA 27A.2591(3)(a)(ii). The trial court found that the Davises' third-party complaint against Snyder and Diamond S, Inc., was frivolous under § 2591 because the third-party plaintiffs had no reasonable basis to believe that the facts underlying their legal position were in fact true. Section 2591 provides:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.
> (2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.
> (3) As used in this section:
> (a) "Frivolous" means that at least 1 of the following conditions is met:
> (i) The party's primary purpose in initiating the

action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(ii) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(iii) The party's legal position was devoid of arguable legal merit.

(b) "Prevailing party" means a party who wins on the entire record.

The bases of the Davises' third-party complaint and amended third-party complaint were that the 1976 deed of Davis, Sr., conveying parcels 1A and 1B to the Hattersleys had been altered, that the Hattersleys had no knowledge of the deed between themselves and Snyder in which parcels 1A and 1B were conveyed to Snyder, and that the Hattersleys never delivered a deed regarding parcels 1A and 1B to Snyder.

Prior to trial, Snyder and Diamond S, Inc., filed a motion for summary disposition pursuant to MCR 2.116(C)(10) regarding the Davises' third-party complaint, asserting that there was no genuine issue of material fact for trial and that they were entitled to judgment as a matter of law. Moreover, they requested that the court find that the third-party claim was frivolous for purposes of § 2591. In an opinion issued on October 1, 1987, the court, while denying the motion, made the following statements and observations:

The real issue in this case is whether the warranty deed from Fred G. Davis Sr. and Marie O. Davis to Peter H. Hattersley and K. Darlene Hattersley recorded in liber 453, p. 1235 was valid.

The Court has reviewed the depositions, pleadings and affidavits in this matter.

The claims of defendants as to alteration of the deed are based on the belief of Maria T. Davis that her father-in-law would not sell the described land.

She admits that she has no personal knowledge of an alteration of the deed and requested the Court to withhold judgment until the deed could be examined by document examiner Walter Van-Stratt of Lansing employed by her. The Court granted the request. Mr. VanStratt reported by letter that he could not find an alteration. The Court cannot accept such letter as it is clearly hearsay until supported by testimony and admitted. The same is true of a letter received from document examiner James H. Steggall of Frankenmuth which reports a like conclusion.

Also in the pleadings is a Zerox [sic] copy of the deed in question from the 1976 files of the firm of Sinclair and Clulo supported by an affidavit executed by Ginger Nitz, office manager of that firm, which contains the identical description which appears in the recorded deed.

From the evidence appearing in the pleadings it would appear that defendants Fred Davis Jr. and Marie Davis' claim of alteration of the warranty deed is without any factual basis.

As to the claim that the deed was unsigned upon execution, there would seem to exist an estoppel as Fred Davis Jr. admitted to being present and witnessing the execution on page 20 of his deposition taken on July 2, 1987.

A question of fact still exists as to the consideration and delivery of this deed.

The question raised by the defendants as to the validity of the grant deed between Hattersleys and Snyders is not as a matter of law a question open to the defendants for if the deed between Davises and Hattersley is valid, the heirs of the Davises would be strangers to the Hattersley/Snyder transaction and have no standing to challenge the validity of that exchange.

While the evidence would indicate that the defendants' position is frivolous they are entitled to have it tried on the merits and summary judgment will therefore be denied.

The defendants should, however, be aware that if the claims are indeed frivolous that Court Rule

MCR 2.114 may apply. However, the Court cannot at this time say that defendants' claims are so clearly unenforceable that no factual development can possibly justify the relief requested. *Kinnunen v Bohlinger,* 128 Mich App 635; 341 NW2d 167 (1983).

The court rule, MCR 2.114, cited by the trial court in its October 1, 1987, opinion, provides, in pertinent part:

> (B) Signature Requirement. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record. A party who is not represented by an attorney must sign the pleading.
>
> \* \* \*
>
> (D) Effect of Signature. The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that
>
> (1) he or she has read the pleading;
>
> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the pleading is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (3) the pleading is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> (E) Sanctions for Violation. If a pleading is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees.
>
> (F) Sanctions for Frivolous Claims and Defenses.

> In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2).

This court rule imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed. *Briarwood v Faber's Fabrics, Inc,* 163 Mich App 784, 792-795; 415 NW2d 310 (1987); *Hicks v Ottewell,* 174 Mich App 750; 436 NW2d 453 (1989). The reasonableness of the inquiry is determined by analysis under an objective standard. *Briarwood, supra.* MCR 2.625(A)(2), which is referenced in MCR 2.114(F), provides that, if a court finds, on motion of a party, that an action or defense was frivolous, "costs shall be awarded as provided by MCL 600.2591; MSA 27A.2591." We believe that, similarly, in examining whether, under § 2591(3)(a)(ii), a party had no reasonable basis to believe that the facts underlying his or her legal position were in fact true, an objective standard of reasonableness is appropriate.

At trial, Maria T. Davis stated that she did not believe that the signature on the deed conveying parcels 1A and 1B to the Hattersleys was her father-in-law's. She admitted, however, that she had no formal training in handwriting analysis and that a professional document examiner she had hired prior to trial had concluded that the signature of Davis, Sr., on the 1976 deed was genuine. She also admitted that she had discovered among her father-in-law's papers, after having been served in this action, several other documents signed by Davis, Sr., involving the 1976 sale of parcels 1A and 1B, including several listing agreements as well as a purchase agreement between him and the Hattersleys. Moreover, as noted by the circuit court, Fred G. Davis, Jr.,

Maria T. Davis' husband, signed the 1976 deed as a witness to his father's signature. In view of this evidence—evidence which, far from supporting, or even tending to support, any reasonable belief that the signature of Davis, Sr., on the 1976 deed to the Hattersleys was not genuine, instead confirms the signature's authenticity—we are unwilling to differ with the trial court's finding that the Davises' counterclaim was anything but frivolous. Accordingly, we affirm the trial court's order requiring payment to Snyder and Diamond S, Inc., of $5,116.10 in costs and fees.

Affirmed. Costs to appellees. MCR 7.216(C); *Briarwood, supra,* p 795.