# STATE OF MICHIGAN

# COURT OF APPEALS

LINDSAY CLARK ROSS,

        Plaintiff/Counter-Defendant-
        Appellant,

v

ESTATE OF LEILA M. VAN ORNUM, ESTATE
OF EARL NEWELL VAN ORNUM, and
ESTATE OF ROBERT VAN ORNUM,

        Defendants,

and

MARK. D. TOUSIGNANT, Personal
Representative of the ESTATE OF VIVIAN
ALICE BILLINGS,

        Defendant/Counter-Plaintiff-
        Appellee.

UNPUBLISHED
May 28, 2015

No. 319818
Iron Circuit Court
LC No. 10-004330-CH

Before: GLEICHER, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Following a bench trial, the circuit court rejected plaintiff Lindsay Ross's bid to quiet title to lakefront property based on his alleged adverse possession of the land. Because Ross failed to establish that he openly and notoriously possessed the land for the necessary period of time, we affirm.

## I. BACKGROUND

On August 25, 2010, Ross filed a complaint to quiet title to three parcels of land abutting Indian Lake in Stambaugh Township. Parcel A encompasses 1.66 acres and Parcel B .90 acres of densely wooded land along the lake. The two parcels are separated by a lot owned by Richard

-1-

Andreski.[1]  Parcel C is a 1.52-acre strip running along the northern edge of Parcels A and B, as well as the land of Andreski and other neighboring parcels.  Parcel C serves as a connector to the nearest public road.  Ross contends that he has been using the subject properties since 1987.  In the 1990s, Ross investigated the property's ownership and learned that no owner of record appeared in township or county tax rolls.  At some point, Ross constructed a ramshackle cabin out of salvaged materials.  He also erected a "shed" consisting of hundreds of books stored on wooden pallets and covered with plastic tarps, upon which he balanced tin sheets as a makeshift roof.  Ross built a second "shed," which is actually a flimsy roof held up by plastic shelving units.  Ross parked several cars on the parcels, including a van which he partially covered with a camouflage duck blind to conceal it from view.

This Court previously described the early stages of this lawsuit in *Ross v Estate of Lelia M Van Ornum*, unpublished per curiam opinion of the Court of Appeals, issued October 23, 2012 (Docket No. 302458), unpub op at 1-2, as follows:

> On August 25, 2010, [Ross] filed a complaint to quiet title, naming the estates of Lelia M. Van Ornum, Earl Newell Van Ornum, Robert Van Ornum, and Vivian Alice Billings, "and all unknown heirs, devisees, and assignees of the deceased" as defendants.  The trial court ordered service by publication on September 20, 2010, and notice was published on October 6, 13, and 20, 2010.  None of the estates named in [Ross]'s complaint filed a response, and [Ross] moved for default judgment on November 9, 2010.  A hearing on [Ross]'s motion for default judgment was held on December 7, 2010.  At the default hearing, [Mark] Tousignant, who is the personal representative for the Billings estate named in [Ross]'s complaint appeared on a limited basis to challenge the "jurisdiction" on the basis that it was not proper because the Billings estate was not the proper defendant in a quiet title action.  The trial court stated on the record that it was granting [Ross]'s motion for default judgment in regard to all the named defendants in [Ross]'s complaint except the Billings estate; however, the default judgments were never entered.  The trial court also stated that it agreed with Tousignant, and that [Ross]'s complaint named incorrect parties as defendants.  The trial court informed [Ross] that he would have to issue "a proper summons and complaint" and that it would extend the summons, which expired on November 24, 2010.

> On January 10, 2011, Tousignant moved for summary disposition pursuant to MCR 2.116(C)(2) (process issued insufficient) and MCR 2.116(C)(3) (service of process insufficient).  A hearing regarding Tousignant's motion was held on January 21, 2011.  At that hearing, Tousignant stated that he did not

---

[1] Ross previously filed suit against Andreski, claiming a prescriptive easement to a trail across his property.  The circuit court summarily dismissed Ross's claim and this Court affirmed.  *Ross v Tony Andreski, Inc*, unpublished opinion per curiam of the Court of Appeals, issued October 10, 2013 (Docket No. 308693).

receive a summons with an extended expiration date, and reiterated his argument that [Ross] improperly named the estate as a defendant. [Ross] argued, in essence, that whether the summons expired and/or the Billings estate was improperly named as a defendant did not matter because [Ross]'s notice was properly published as directed by the trial court. The trial court noted that the parties named in the published notices were improper, and that accordingly, it was going to grant Tousignant's motion. The trial court told [Ross] that he was "going to have to start all over." An order dismissing [Ross]'s case without prejudice in regard to all the various estates named as defendants in [Ross]'s complaint was entered on February 3, 2011.

In the prior appeal, this Court determined that Ross should have named the heirs and devisees as individual defendants, rather than naming the estates, as the individuals took title to the properties by operation of law. *Id.* at 2-3. Dismissal was an inappropriate remedy, this Court concluded, as the circuit court could have simply ordered Ross to amend his complaint and name the real parties in interest. *Id.* at 3. At the close of its opinion, the panel indicated:

> Because we are reinstating [Ross]'s case in regard to all the named defendants, we need not address [Ross]'s final argument that the trial court erred by failing to enter default judgments against the estates that did not appear. *Upon reinstatement of the case, [Ross] may renew his motion for default judgment if appropriate.* [*Id.* at 4 (emphasis added).]

Upon the case's return to the circuit court, Ross filed a motion for default judgment against the named estates as they had failed to answer his complaint. Tousignant then filed an answer and affirmative defenses, along with a countercomplaint accusing Ross of trespass and of damaging the land. Tousignant alleged that the property was owned by Vivian Billings until her death in 1992. Ross responded with a barrage of motions to strike the countercomplaint and to disqualify defense counsel and the circuit court judge. The circuit court initially succumbed to a misinterpretation of this Court's earlier opinion and stated at an April 10, 2013 hearing, "I don't see that I have any choice but to enter a default judgment [against all defendants]. That's what the Court of Appeals directed me to do." This decision was never reduced to a written order. Apparently, neither Ross nor Tousignant had supplied the judge's chambers with copies of their various pleadings and motions on remand. Upon learning of these activities, the court reconsidered and declined to enter the default judgments.

The circuit court proceeded to conduct a two-day bench trial on the parties' cross complaints to determine ownership of the land. Ross conceded that Tousignant was the record owner of the property, but attempted to establish his superior rights through an extended period of adverse possession. Ross testified that he built a cabin on Parcel B in 1994, using maple timbers from the land and materials salvaged from the Stambaugh High School bus barn when it was remodeled. Ross claimed that he constructed a dock on the lake from Parcel B in 1995, and throughout the years created roads and trails "all over" the property. In 2007, Ross built a makeshift "shed" that he called the "book depository." Then, in 2008, Ross claimed that he built

a shed on Parcel B out of "corrugated steel supported by shelves" to house items that he had moved from his father's garage. Ross asserted that he moved large items from his father's garage to the property and covered them with plastic tarps.[2] Ross admitted at trial that he purposely chose the placement of his cabin and sheds so they would "be concealed from the lake."

Despite his intent to conceal his construction, Ross testified that he took action to assure that others knew he was occupying the property. Ross indicated that he placed vehicles on the ends of the roads on the property in 1994, 2000, 2001, and 2007. He testified that he often sat on his dock and waved at boaters to "show that this is Lindsay's land here." Ross claimed that he told various people about his occupancy of the property and that the neighbors were aware that he was occupying the land. Yet, Ross called no neighbors or individuals who had visited the property to corroborate his claims.

At the close of Ross's proofs, the circuit court entered a directed verdict in favor of Tousignant in relation to ownership of Parcel A. The court noted that Ross had presented no evidence that his possession of Parcel A was open or notorious.

During Tousignant's proofs, he presented testimony from township supervisor and assessor Eugene Pellizzaro and neighboring landowner David Andreski. Pellizzaro testified that he became aware of Ross's use of Parcel B when he investigated a complaint about junk on the property and encountered Ross. Pellizzaro alleged that Ross admitted ownership of the personal property littering the property and promised to remove it. Pellizzaro denied that Ross claimed ownership of the land. Moreover, Pellizzaro described that the tarp-covered items on the property appeared to be recently placed as grass and weeds had not yet grown long around them. Pellizzaro took pictures while visiting Parcel B, revealing that Ross's makeshift cabin was well concealed from view and that Ross had camouflaged his van from view using a duck blind.

Andreski testified that, contrary to Ross's timeline of events, Ross's cabin was "definitely not" on the property before 2000. Andreski attested that he visited his property annually before 2007. He further insisted that he and his family members, not Ross, had built the now-worn roads on the property many years earlier. Andreski had never observed any sign that anyone other than he and his family worked on clearing the roads. Andreski further testified that he first observed the improvised cabin in 2009, and the condition of the wood used in construction revealed that it had been cut within the previous six to 12 months.

Ultimately, the court quieted title in Parcels A and B in Tousignant's name. Parcel C, as an access road used by various neighboring land owners, was not subject to either parties' ownership. The court explained its judgment by noting Ross's failure to present any witnesses to verify his claims that his use and occupancy of the land was open and known to others or that it had extended for the necessary 15-year period. The court further noted that Tousignant had successfully contradicted Ross's evidence.

---

[2] Ross's father had owned property on Indian Lake, which he sold in 2008.

## II. ANALYSIS

### A. THE DEFAULT JUDGMENT

Ross first complains of the circuit court's decision not to enter the default judgments against the named defendants on remand. Ross contends that the circuit court mistakenly believed that it needed to remedy its error of failing to resolve Ross's various motions before considering the motion to enter defaults. Rather, the entry of the default judgments rendered Ross's motions moot and the court's failure to consider them harmless.

We review a trial court's decision to on a motion to set aside a default judgment for an abuse of discretion. See *Zaiter v Riverfront Complex, Ltd*, 463 Mich 544, 552; 620 NW2d 646 (2001). Pursuant to MCR 2.613(D)(1), a motion to set aside a default judgment "shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed." However, the court had not actually entered the default judgments. Courts speak through their written orders, *Tiedman v Tiedman*, 400 Mich 571, 576; 255 NW2d 632 (1977), and no such order was issued in this case.

Moreover, Tousignant could have established good cause and a potential meritorious defense supporting a decision to set aside the defaults. The circuit court misinterpreted this Court's earlier opinion, which only required the entry of default judgments "if appropriate." A default judgment was not "appropriate" in this case because the named defendant estates were not parties in interest and this Court had ordered the circuit court to allow Ross to amend his complaint to name the correct defendant or defendants. Tousignant did respond to the complaint. And if the circuit court believed Tousignant's evidence, Ross's adverse possession claim would be defeated. Accordingly, we discern no error in this regard.

### B. MOTION TO REOPEN THE PROOFS

A month after the bench trial concluded, but before the circuit court issued its judgment, Ross filed a motion to reopen proofs to present into evidence a document produced by the FBI. The document, dated October 7, 1995, describes a search of the property owned by Ross's parents on Indian Lake. It appears that the FBI was investigating Ross's activities and was searching for evidence at his parents' properties. The document indicated that Ross's parents informed the agents that Ross had a cabin on Parcel B. Ross's parents described the building to the officers as a "shed" that "is about 10ft x 20ft and is constructed out of garage doors and corrugated metal roofing." This evidence, Ross contended, contradicted Andreski's claim at trial that Ross's cabin was not constructed before 2000, and likely not until between 2007 and 2009.

The circuit court determined that the contents of the FBI document were hearsay as they were a description by absent witnesses about the statements of other absent witnesses. The court expressed "concern[]," however, "because this is apparently a pretty critical piece of evidence." Accordingly, the court allowed Ross 60 days "to identify the agent who supposedly looked at this property." The agent could then testify regarding whether he visited Parcel B and observed the existence of the cottage, eliminating any hearsay concerns. Ross did not follow through and

find the agents that authored the document, although two agents were identified in the report. As such, the circuit court denied Ross's motion to reopen the proofs.

We review for an abuse of discretion a circuit court's decision on a motion to reopen proofs. *Bonner v Ames*, 356 Mich 537, 541; 97 NW2d 87 (1959). When evaluating whether the court abused its discretion, we consider whether the adverse party would be "deceived or prejudiced" by reopening the proofs, and whether there would be inconvenience or surprise to the court, parties, or counsel. *Id.* Other relevant factors include "whether conditions have changed or undue advantage would result, whether newly discovered and material evidence is sought to be admitted, whether surprise would result, and the timing of the motion during the trial." *People v Moore*, 164 Mich App 378, 383; 417 NW2d 508 (1987), mod in part on other grounds 433 Mich 851 (1989). The court may also first resolve the "threshold issue" of whether the proffered evidence would even be admissible. *People v Herndon*, 246 Mich App 371, 420; 633 NW2d 376 (2001).

The circuit court correctly determined that the 1995 FBI document was hearsay under MRE 801—it was a written statement which Ross wanted to admit to prove the truth of the matter asserted. Hearsay is not admissible unless it falls within an evidentiary exception. MRE 802. In fact, the document contained hearsay within hearsay; it was an FBI agent's report regarding Ross's parents' statements and Ross wanted to establish the proof of his parents' assertions (or that the agent actually observed the property without including that information in his or her report). When evidence contains hearsay within hearsay, the proponent must establish that both layers fall within an exception to the hearsay rule in order to be admissible. See *Maiden v Rozwood*, 461 Mich 109, 125; 597 NW2d 817 (1999).

Ross contends that the FBI document qualifies for admission under MRE 803(24), the hearsay catch-all exception, which provides:

> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purpose of these rules and the interests of justice will be served by the admission of the statement into evidence.

The document was "offered as evidence of a material fact," i.e., the existence of Ross's cabin in 1995. However, the document was not "more probative on the point for which it [was] offered than any other evidence that the proponent can procure through reasonable efforts." Two FBI agents were identified as the document's authors. Ross could have tracked them down as suggested by the circuit court. The agents' testimony regarding their search of the Indian Lake property would have been more probative than the document. Moreover, Ross has not indicated that his parents are deceased. Accordingly, it appears that Ross could have presented the testimony of one or both of his parents regarding the existence of his cabin in 1995, as they described to the FBI agents. Ross claimed that various neighbors and even some local officials visited the property in the 1990s. The personal observations of those individuals would have more probity than the FBI document as well. Accordingly, the proffered document does not

meet the requirements of the catch-all exception to the hearsay rule. Ultimately, given Ross's late presentment of this evidence and failure to follow the court's sage advice to render the document admissible, we discern no error in this regard.

Ross also challenges the circuit court's refusal to reopen the evidence to present an August 19, 2013 statement by the superintendent of schools, two affidavits from John Harrison, and two affidavits prepared by himself. Harrison's statements indicated that he visited Ross on Parcel B in 2004, and observed the "improvised cabin." Ross's affidavits dealt with a correction to Harrison's affidavit and recounted Ross's unsuccessful attempts to secure an affidavit from Andrew Busakowski regarding the date on which Ross constructed his cabin. The school superintendent attested that the high school bus garage was renovated in 1994. The circuit court struck this evidence at a September 4, 2013 hearing, however the transcript of that proceeding is not in the lower court record. Even so, we discern no error in the court's decision. Ross had every opportunity to present evidence at trial to establish his adverse possession claim. Instead, Ross attempted to make his case after the trial and the parties were instructed to present closing arguments in writing. The timing of Ross's request would result in prejudice and inconvenience to Tousignant who would then be unable to effectively rebut the newly introduced evidence.

## C. ADVERSE POSSESSION

Finally, Ross challenges the merits of the circuit court's judgment against him on the issue of adverse possession. We review de novo the resolution of equitable actions to quiet title. *Sackett v Atyeo*, 217 Mich App 676, 680; 552 NW2d 536 (1996). Following a bench trial, we review a court's factual findings for clear error and legal rulings de novo. *Canjar v Cole*, 283 Mich App 723, 727; 770 NW2d 449 (2009). A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made. *Id*. at 251. We note that the circuit court actually entered a directed verdict on Ross's adverse possession claim to Parcel A, and that it is unclear from his brief whether Ross is challenging that decision as well as the court's judgment regarding Parcel B. We will give the in pro per plaintiff the benefit of this uncertainty and consider the court's rulings as to both parcels.

"To establish adverse possession, the party claiming it must show clear and cogent proof of possession that is actual, visible, open, notorious, exclusive, continuous and uninterrupted for the statutory period of 15 years, hostile and under cover of claim of right." *Beach v Lima Twp*, 489 Mich 99, 106; 802 NW2d 1 (2011) (quotation marks and citation omitted). "The rule is that evidence of adverse possession must be strictly construed, and every presumption is in favor of the true owner." *Sheldon v Michigan Central R Co*, 161 Mich 503, 512; 126 NW 1056 (1910); see also *Rozmarek v Plamondon*, 419 Mich 287, 292; 351 NW2d 558 (1984). The circuit court rejected Ross's claim after finding that he did not satisfy the elements of "open" or "notorious" possession. The court also implied that Ross had not established any use for the necessary 15-year period.

"It is well settled that in order to establish adverse possession, the true owner must have actual knowledge of the adverse possession, or alternatively, the possession must be so notorious as to raise the presumption to the world that the possessor claims ownership." *Rozmarek*, 419 Mich at 293. Open and notorious use provides sufficient notice so "as to leave no doubt in the mind of the owner of the land that his rights are invaded in a hostile manner." *Menter v First*

*Baptist Church of Eaton Rapids,* 159 Mich 21, 25; 123 NW 585 (1909). " 'Open and notorious' possession usually means possession that gives visible evidence to one on the surface of the possessed land." Cunningham, Stoebuck, and Whitman, *The Law of Property 2d* 810 (1993). Actual possession by the claimant is usually deemed open and notorious "unless it is hidden in some unusual way." *Id.* at 811. "The nature of the acts necessary to constitute adverse possession depends to large extent upon the character of the premises." *Barley v Fisher*, 267 Mich 450, 452; 255 NW 223 (1934); see also *Davids v Davis*, 179 Mich App 72, 82-83; 445 NW2d 460 (1989).

Following the bench trial, the circuit court characterized Ross's testimony as self-serving and noted his failure to call any witnesses to verify his claims.[3] Contrary to Ross's claim that he had been occupying the land since 1987, Andreski testified that he saw no evidence of Ross's presence until 2007 or 2008, and Pellizzaro testified that he did not know of Ross's occupation until that same time period. The court also credited photographic evidence and testimony supporting that Ross attempted to conceal his occupation of the property from others.

Accepting the circuit court's credibility assessments, Ross did not establish that he occupied the land for 15 years. While Ross testified that he constructed his cabin in the 1990s, he presented no corroborating evidence. Andreski, on the other hand, did not see Ross's cabin until 2009, and claimed that the roofing materials looked freshly hewn. Moreover, Ross admitted that he did not move most items of personal property found on the land until 2008, when his parents sold their cabin on the lake.

Ross also failed to establish that his use was open and notorious, as the circuit court concluded. The property in question is densely wooded and does not abut a public roadway. The only access is through a private strip of land upon which a two-track driveway has been created. The only public view of the property is from the lake. Ross conceded that he constructed his cabin so as to hide it from view from the lake. He used a camouflaged duck blind to conceal his vehicle. Ross placed no signs or barricades on the property to distinguish it as private. Ross claimed that he began clearing roads and trails on the property in the 1990s, but

---

[3] Ross challenges the circuit court's assessment that Tousignant and Andreski were more credible than him. However, we may not interfere with a trial court's judgment on witness credibility. See *People v Petrella*, 424 Mich 221, 269; 380 NW2d 11 (1985); *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

Andreski contradicted this testimony, asserting that his family had done the work. Although photographic evidence shows that Ross began marking his territory with a maze of miscellaneous junk in 2008, Ross presented no corroborating evidence that anyone knew or could have known of his occupation earlier. Accordingly, we discern no clear error in the circuit court's judgment.[4]

 We affirm.

        /s/ Elizabeth L. Gleicher
        /s/ Kirsten Frank Kelly
        /s/ Deborah A. Servitto

---

[4] The panel assures Ross that we carefully read his final communication regarding this case, and have considered his appeal without the "obliviousness borne of feminine fascination with the powerful male and loathing for the weak." And while engaging in "the woman's work" of applying the law to the facts of this case, we have reached a gender-neutral decision.