SEIFFERLEIN *v.* FOERSTER.

1. EVIDENCE — WITNESSES — INTERESTED WITNESSES — WEIGHT OF TESTIMONY.

   The testimony of interested witnesses should be weighed with that fact in mind.

2. APPEAL AND ERROR — DE NOVO — VIEWS OF TRIAL JUDGE TO BE CONSIDERED.

   While the Supreme Court hears chancery cases *de novo*, and is not controlled by the views of the trial judge, his

On right of one in permissive possession of real property to acquire title by adverse possession, see note in 12 L. R. A. (N. S.) 1140.

On hostility as essential element in adverse possession, see note in 15 L. R. A. (N. S.) 1192.

findings on disputed facts are not to be overlooked, and in close cases his views are very helpful.

3. ADVERSE POSSESSION—EVIDENCE—FINDINGS OF COURT SUPPORTED. In a suit to set aside certain deeds and to quiet title to land, where plaintiff claimed that defendants and their grantor worked said land under an agreement with her deceased husband, and defendants claimed title by adverse possession, the findings of the trial court on the disputed facts in favor of plaintiff, *held*, to be supported by the record.

4. SAME—PERMISSIVE POSSESSION NOT ADVERSE. Permissive possession does not ripen into title by adverse possession; but possession to be adverse must be hostile in addition to being actual, continued, visible, notorious, and distinct, and it must be established by clear and cogent proof.

5. SAME—HOSTILE POSSESSION NOT SHOWN. Where the proofs establish that defendants' possession was not hostile, their claim of title by adverse possession must fail.

6. SAME—EVIDENCE—ADMISSIBILITY. Testimony by defendants' grantor that he worked the land in dispute under an arrangement with plaintiff's deceased husband was admissible where it was shown that knowledge of said arrangement was brought home to defendants.

7. SAME—TAX RECEIPTS ADMISSIBLE—INTENT. Tax receipts showing that plaintiff's husband paid the taxes on said land until his death, and that later plaintiff paid them, *held*, admissible for their bearing on the question of defendants' intention during those years to claim title.

Appeal from Macomb; Barton (Joseph), J., presiding. Submitted February 7, 1922. (Docket No. 88.) Decided March 30, 1922.

Bill by Emma Seifferlein against John C. Foerster and others to set aside certain deeds and to quiet title to land. Defendants filed a cross-bill, asking affirmative relief. From a decree for plaintiff, defendants appeal. Affirmed.

*Lungerhausen, Weeks & Lungerhausen* and *Neil E. Reid,* for plaintiff.

*Harrison Geer,* for defendants.

FELLOWS, C. J.   On October 28, 1874, Louis Seifferlein acquired title to the west half of the west half of the northeast quarter of section 35, township of Warren, Macomb county.   On December 24, 1872, John Michael Seifferlein and his wife, Emiline, acquired title to 20 acres adjoining this 40 on the west.   It would appear, although the deed is not in the record, that they then owned the 20 acres on the west of this 20, so that they owned a long 40.   Louis Seifferlein was the husband of the plaintiff and John Michael Seifferlein was his uncle.   The Grand Trunk railway ran diagonally through these two 40's, cutting off a triangular piece in the northwest corner of the 40 then owned by Louis.   This triangular piece fronted on the highway and adjoined lands cropped by John Michael. After these parties had acquired their title, and probably about 1880, they entered into an arrangement that John Michael should work this triangular piece and Louis should work an equal amount of John Michael's land, and with a tape line they measured off a triangular piece of land on John Michael's 40 adjoining Louis' land which he was to work.   This arrangement was made to save the inconvenience and hazard of crossing the railroad.   While defendants claim in their answer that this agreement was an agreement to exchange titles to these triangular pieces of land there is no testimony to support such claim and all the testimony shows that the possession by each of the other's triangular piece was permissive only.   Defendants' Exhibit 1 shows the situation and is quite necessary to its understanding, and we, therefore, make it a part of the opinion.   These triangular pieces are designated on the exhibit as "easterly tri-

angle" and "westerly triangle." But the witnesses speak of them as the "north" and "south" triangles and they will be so designated in this opinion.

On March 29, 1892, John Michael Seifferlein conveyed his 40 to John C. Foerster. He did not include in his deed the north triangle nor did he except the south triangle. On March 27, 1912, John C. Foerster and his wife entered into a contract with their son Alfred to sell him their 40. This contract likewise did not include the north triangle nor did it except the south triangle. By 1916 the north triangle had become valuable and was desired by the Grand Trunk for the purpose of extending its yards. On March 6th, John C. Foerster and wife conveyed to their son Alfred and wife by warranty deed their 40 from which they excepted the south triangle with a recital in the deed that it had been exchanged for the other triangle. On the same day Foerster and wife executed a quitclaim deed to their son and his wife of the north triangle. In the same month Alfred and wife conveyed the north triangle to a representative of the Grand Trunk.

Louis Seifferlein is now deceased. Before his death and in the spring of 1915 he placed the title to his 40 in himself and wife as tenants by the entirety and she now claims title as survivor. From the making of the arrangement in 1880 down to and including the year 1915 and until about the time the Grand Trunk sought to acquire the north triangle, it was worked in connection with the John Michael Seifferlein 40 and the south triangle was worked in connection with the Louis Seifferlein 40. Early in 1916, the Foersters, father and son, called on plaintiff, her husband being then deceased. The detail of their conversation is in dispute. Mr. Foerster then claimed to own the north triangle by adverse possession. There is no testimony that he had before this time made such claim to either plaintiff or to her husband before his death; Mr. Foerster was evidently willing to give something to clear up the title. Plaintiff claims that

at this conversation he admitted that at the time he bought his 40 he talked about the triangle with her husband and they agreed to leave it as it was. The Foersters deny this part of the conversation. Defendants' counsel makes much of the fact that plaintiff did not recall this part of the conversation until after a recess when she was again called to the stand. We do not attach much significance to this as Mr. Foerster did not make any denial of it when he was first upon the stand and made his denial of it when he likewise was recalled to the stand. All of these parties were interested and their testimony should be weighed with that in mind. Plaintiff, however, called a Mr. Jarvis, who, so far as this record discloses, was absolutely disinterested. He worked for Alfred Foerster in 1914 on the Foerster farm. This was after Alfred had bought the place of his father on the contract. He testifies that he asked Alfred about the crook in the fence, having reference to the north triangle, and that Alfred informed him that "Seifferleins always worked our corner on that side and we worked their corner on this side, to save crossing the railroad." Alfred Foerster does not deny having this conversation with Mr. Jarvis. It strongly sustains the plaintiff's contention. The trial judge who heard and saw the witnesses found the facts to be with the plaintiff. While we hear chancery cases *de novo* and are not controlled by the views of the trial judge, his findings on disputed facts are not to be overlooked and in close cases his views are very helpful. We are satisfied in the instant case that he correctly measured the credibility of the witnesses and that his conclusions on the disputed facts should not be disturbed.

Let us restate the facts we find established: John Michael Seifferlein and his nephew Louis Seifferlein owned adjoining 40's, both traversed by the Grand

Trunk.  A triangular piece of about 2½ acres was cut off from the balance of Louis' farm by the railroad; it was convenient for John Michael to work this piece of land; it was inconvenient for Louis; they arranged that John Michael should work it, and that Louis should work an equal amount of land belonging to his uncle, and it was measured off; this saved each from crossing the railroad in their work.  When Foerster bought of John Michael he talked with Louis and they agreed to continue the arrangement.  As late as 1914 each was working a triangular piece of land belonging to the other and each recognized the other's title.  Indeed, it was not until after Louis' death, and when the land had greatly increased in value, that notice was brought home to plaintiff that the Foersters claimed title.

Upon these facts no difficult questions of law arise.  This court has spoken so many times on the subject that we need not again review the authorities.  Permissive possession so long as continued does not ripen into title by adverse possession; possession to be adverse must be hostile in addition to being actual, continued, visible, notorious and distinct, and it must be established by clear and cogent proof.  It is not established in the instant case, but on the contrary the proofs establish that it was not hostile, therefore not adverse.

Two questions are raised on the admissibility of testimony which should be considered.  John Michael Seifferlein was called to establish the arrangement between him and his nephew Louis.  Counsel for defendant most strenuously urged that the testimony should not be received against the defendant Foerster, the arrangement not being with him and not binding on him.  We think plaintiff's counsel pursued the orderly course.  He proved (1) that the arrangement was made, and (2) that it was brought

home to Mr. Foerster. The other objection relates to the admission of tax receipts showing that Louis paid the taxes from 1886 until his death and that later his wife paid the taxes. We think they were properly received in evidence. In *Croze* v. *Quincy Mining Co.*, 199 Mich. 515, this court said:

"If defendant had in good faith intended to claim the entire title it is difficult to understand why it should have permitted one-third of the premises to be assessed to plaintiff and his predecessors for 15 years, knowing, as it must have, that when they paid the taxes they did so in the belief that they were the undisputed owners thereof. The fact that defendant permitted this to be done for 15 years is very persuasive that it did not intend, during that time, to claim the entire title. While it is not conclusive of the intent, it is a circumstance to be taken into consideration in determining defendant's intention" (citing authorities).

It follows from what has been said that the decree must be affirmed. Plaintiff will recover costs of this court.

WIEST, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.