ENNIS *v.* STANLEY.

1. Adverse Possession—Tacking.

Plaintiff who has not been in possession of property 15 years but who is claiming ownership to property by adverse possession must establish that his predecessor held possession of the property openly and adversely to all others, and that plaintiff did likewise upon succeeding to the predecessor's rights and was entitled to tack his alleged adverse holding to the predecessor's.

2. Same—Constructive Possession.

Constructive possession of land is in the holder of the record title.

3. Same—Claim of Title.

A mere claim of title will not ripen into title by adverse possession no matter how long asserted.

4. Same—Occasional Entry Upon Land.

Occasional or periodical entry upon land does not constitute actual possession sufficient to constitute adverse possession.

5. Same—Open, Visible, Hostile Possession—Owner's Knowledge of Hostile Claim.

The true owner must have actual knowledge of the hostile claim of one claiming title by adverse holding or the possession must be so open, visible, and notorious as to raise the presumption

References for Points in Headnotes

[1] 1 Am Jur, Adverse Possession §§ 151–153.
[3] 1 Am Jur, Adverse Possession §§ 126, 128, 207.
[4, 6, 8] 1 Am Jur, Adverse Possession §§ 147–150.
[5] 1 Am Jur, Adverse Possession §§ 139, 140.
[9] 1 Am Jur, Adverse Possession §§ 205, 206.
[10] 1 Am Jur, Adverse Possession § 237.
[11] 1 Am Jur, Adverse Possession § 150.
[12] 1 Am Jur, Adverse Possession § 40 *et seq.*
[13] 1 Am Jur, Adverse Possession § 187 *et seq.*
[14, 15] 1 Am Jur, Adverse Possession § 213.
[17] 8 Am Jur, Boundaries §§ 74, 75.

of notice to the world that the right of the true owner is invaded intentionally and with the purpose to assert a claim of title adversely to his, so that if the true owner remains in ignorance, it is his own fault.

6. SAME—CONTINUITY OF POSSESSION.
    To acquire title by adverse possession there must be a cause of action for every day during the whole period required to perfect title by adverse possession.

7. SAME—NATURE OF POSSESSION.
    The possession of one claiming title by adverse possession must be more than a possession which will enable a person on the ground of a possessory title to maintain trespass or ejectment against a stranger.

8. SAME—OCCASIONAL TRESPASSES—CONTINUITY OF POSSESSION.
    Occasional trespasses or acts of ownership do not constitute such continuous possession as will ripen into title by adverse possession, though extending over the statutory period.

9. SAME—COLOR OF TITLE—AREA OF ACTUAL POSSESSION.
    Title by adverse possession, in the absence of color of title, can extend no further than the boundaries of that land which is actually used and occupied for the statutory period by those claiming title by adverse possession.

10. SAME—BURDEN OF PROOF.
    One claiming title by adverse possession has the burden of showing that his possession or that of himself and his predecessors in title was actual, continued, visible, notorious and hostile.

11. SAME—CONTINUITY OF POSSESSION—FINDING OF COURT—EVIDENCE.
    Finding of trial judge that possession of adjoining 6-acre tract to 40 acres, purchased from common owner by plaintiffs' predecessor, was lacking in sufficient continuity to constitute adverse possession thereof *held*, justified by proofs showing that the predecessor had only cropped portions thereof during nonconsecutive years.

12. SAME—VENDOR AND PURCHASER.
    A purchaser under a land contract may not claim to hold title to land adversely to the contract vendor.

13. SAME—CLAIM OF TITLE.
    It is essential to adverse possession by one who has no title that the occupancy be with intention to claim title.

14. Same—Mistake—Intent to Hold to True Line.

Possession up to a fixed boundary under a mistake as to the true line by parties intending to hold only to the true line is not hostile and will not ripen into title.

15. Same—Intent to Hold to True Line—Evidence.

Decree denying relief to plaintiffs who intended to have possession only to the true line which did not include a 6-acre tract adjoining land they had purchased was proper, where they failed to establish title by adverse possession to the disputed tract.

16. Boundaries—Fence—Absence of Dispute—Acquiescence.

Claim that fence along north line of 6-acre tract between north and south 40 acres of 86-acre east half of a quarter section had been acquiesced in as the north boundary of the quarter section's southeast quarter which the common owner had conveyed to plaintiffs' predecessor before selling the remainder to defendants by a conveyance of the east half of the quarter "except the south 40 acres thereof" *held*, not established under record showing that the fence antedated the division of the farm and no dispute had arisen between any owners of the property until shortly before suit to quiet title.

17. Same—Acquiescence—Agreement—Monuments.

To establish a boundary line by agreement and acquiescence not only must there have been an express agreement, and monuments erected and acquiesced in, but a doubt or controversy must have existed as to the true line.

Appeal from Kalamazoo; Fox (Raymond W.), J. Submitted June 6, 1956. (Docket No. 11, Calendar No. 46,632.) Decided September 4, 1956. Rehearing denied December 4, 1956.

Bill by Kenneth L. Ennis and Katherine H. Ennis against Orvie Stanley, Carrie E. Stanley, Bobby Nelson and Lois Nelson to quiet title and for injunctive relief. Bill dismissed. Plaintiff appeals. Affirmed.

*Kenneth A. Fricke*, for plaintiffs.

*Crum, Allen & Mullen*, for defendants,

CARR, J. Plaintiffs instituted this suit in circuit court for the purpose of obtaining injunctive relief and to quiet title to a parcel of land in the township of Comstock, Kalamazoo county. The bill of complaint filed asserted title by adverse possession on the part of plaintiffs and their predecessors in title for more than 15 years and, further, that a fence had been established as the boundary line by acquiescence, for a like period of time, between the property claimed by them and land owned by defendants. Defendants filed answer denying plaintiffs' claims. The trial resulted in a finding by the circuit judge that the proofs introduced did not establish the right of the plaintiffs to the equitable relief sought. Decree was entered dismissing the bill of complaint, with costs to defendants. Plaintiffs have appealed, claiming that the trial court was in error in entering said decree.

In 1928, and for some period of time prior thereto, Gustave T. Alm was the owner of land described as the east 1/2 of the northwest quarter of section 1, town 2 south, range 10 west, in Kalamazoo county. It appears from the testimony of a surveyor who was a witness on the trial of the cause that the description embraced a farm containing approximately 86 acres. In the year mentioned Gustaf E. Freedland went into possession of the southeast quarter of the quarter section on a contract basis between himself and Alm. The record does not show when Freedland obtained a deed to the property, but apparently he did so and in 1944 he negotiated a sale of the said southeast quarter to the plaintiffs. In connection with the financing of the transaction a deed was given to Fred Ritsema, Jr. Freedland vacated the premises and plaintiffs moved in, in accordance with the arrangement between the parties. Under date of July 20, 1945, Ritsema and wife deeded to plaintiffs, thus

vesting them with legal title to said southeast quarter of the quarter section.

In August, 1938, Alm and wife by warranty deed conveyed to defendants Stanley property described as:

"The east 1/2 of the northwest quarter of section 1, town 2 south, range 10 west; EXCEPT the south 40 acres thereof."

The land in dispute in the instant case is 6 acres of the property embraced within the description contained in the deed to defendants Stanley, and is immediately adjacent to the north line of the 40 acres of which Freedland was the owner, assuming that Alm had previously given to him a conveyance of title to the southeast quarter as described in the subsequent conveyance from Ritsema to plaintiffs.

On the trial of the cause Freedland, testifying as a witness for the plaintiffs, claimed that during the time that he lived on the land described in the contract and subsequent deed by Alm he used the parcel in question up to a certain fence that he assumed was the north boundary of his farm. Specifically, he claimed that in different years he had worked portions of the 6-acre tract and had raised crops thereon. It does not appear that during this period there was any dispute between Freedland and defendants Stanley with reference to the ownership of the land in question. It is conceded that defendants Stanley held the record title. It is equally clear that plaintiffs' claim that they acquired ownership by adverse possession required them to establish that Freedland held possession of the property openly and adversely to all others, that they did likewise when, as they claimed, they succeeded to his rights, and that they were entitled to tack his alleged adverse holding to their own.

*McVannel* v. *Pure Oil Co.,* 262 Mich 518, 525, 526, after referring to prior decisions involving claims of title by adverse possession, summarized the following general principles:

"a. Constructive possession of land is in the holder of a record title;

"b. A mere claim of title, no matter how long asserted, will not ripen into title;

"c. Occasional or periodical entry upon land does not constitute actual possession;

"d. In order to make good a claim of title by adverse holding, the true owner must have actual knowledge of the hostile claim; or,

"e. The possession must be so open, visible, and notorious as to raise the presumption of notice to the world that the right of the true owner is invaded intentionally, and with the purpose to assert a claim of title adversely to his, so that if the true owner remains in ignorance it is his own fault;

"f. There must be such continuity of possession as will furnish a cause of action for every day during the whole period required to perfect title by adverse possession;

"g. The possession must be more than a possession which will enable a person on the ground of a possessory title to maintain trespass or ejectment against a stranger;

"h. Occasional trespasses or acts of ownership do not constitute such continuous possession as will ripen into title by adverse possession, though extending over the statutory period;

"i. Casual hay cutting, amounting to a little more than an annual trespass, is not sufficient to warn the owner of the record title of a claim of adverse possession."

*Bankers Trust Company of Muskegon* v. *Robinson,* 280 Mich 458, 463, pointed out that the constructive possession of land in dispute is in the title holder, and further stated that:

"Title by adverse possession, in the absence of color of title, can extend no farther than the boundaries of that land which is actually used and occupied for the statutory period by those claiming title by adverse possession. They can acquire nothing beyond that which is actually possessed, used, controlled and occupied by them for the statutory period."

In an annotation in 97 ALR 14 *et seq.*, the general subject is considered at length and rules commonly recognized and applied in such cases are indicated. In accordance therewith, and with prior decisions of this Court, the burden rested on the plaintiffs in the instant case to establish their claim that the possession of themselves and of their predecessors in title was actual, continued, visible, notorious and hostile. The trial judge, in discussing the matter in a written opinion filed by him, indicated his conclusions, based on the conflicting testimony of the parties and their witnesses, as follows:

"Viewing the testimony in the light most favorable to the plaintiffs, we have at most the following: Witness Freedland testified that from 1928 on he used to the fence, but further examination and cross-examination indicated only the following uses by Freedland: In 1928 a garden in the northwest corner, a crop in the hollow, and a crop in the northeast corner. In 1929, wheat or clover in the northwest corner, wheat or clover in the hollow, and wheat or clover in the northeast corner. In 1934 wheat in the hollow and again in 1935. Between 1935 and 1944 witness Freedland could only recall one crop of alfalfa and one crop of clover on the northwest corner, and corn in 1943 in the hollow.

"Oats were grown in 1944 on the northeast corner. Since 1944, the evidence discloses that part or all of the property was fertilized 3 times. Clover was grown once on the northwest corner and one crop

of alfalfa. In 1952 and 1953 corn was grown in the hollow."

On the basis of the facts as found the trial judge came to the conclusion that the requisite degree of continuity in the possession claimed was lacking, and that, in consequence, plaintiffs were not entitled to relief on the theory that they and their predecessors in title had held the property adversely for more than 15 years. We think that the proofs in the case justify the findings of the trial court as to the facts. Unquestionably there were years when no part of the 6-acre tract was worked. The use made thereof by Freedland and by plaintiffs was intermittent in character. An element essential to acquiring title by adverse possession was lacking.

As before noted, it does not appear when Freedland became the owner of the property. In their bill of complaint plaintiffs refer to a warranty deed, dated October 6, 1934, on which they relied. During the time that he was in possession by virtue of his contract with Alm it may not be claimed that Freedland held adversely to his contract vendor. *Rodgers* v. *Beckel,* 172 Mich 544; 2 CJS, Adverse Possession, § 121, pp 672, 673. If we assume that the conveyance referred to by plaintiffs was the deed to Freedland, obviously the period of his claimed adverse possession was appreciably less than the statutory period. He had not at the time he sold the property acquired title by adverse possession, even if such possession were considered continuous. It may be noted also that after Ritsema acquired title to the property in 1944, until his conveyance to plaintiffs the following year, the latter were in possession as contract vendees and the benefit of their adverse holding, if such there was, would, under the established rule, inure to the benefit of their vendor. Plaintiffs' claim as to continued adverse holding for more than the

statutory period apparently involves a tacking as between Freedland and Ritsema, and a like situation as between the latter and plaintiffs. It is at least doubtful whether any such finding can be predicated on the record.

As before noted, Freedland had not acquired title to the property in dispute at the time he sold the southeast quarter that he had acquired from Alm. This brings up the query as to the nature of the holding by plaintiffs. As a witness in his own behalf plaintiff Kenneth L. Ennis, examined by the court, testified as follows:

"*Q.* I want to be sure I understand. You claimed ownership up to the fence and you still claim it because that was what was described to you as being the land that was being sold to you?

"*A.* That's correct.

"*Q.* Now, did you have any intention to claim title to any land that was not yours, that belonged to somebody else?

"*A.* No. I don't want to claim something that belongs to anybody else.

"*Q.* If it is now established that the defendant owns this 6 acres, do you have any intention of claiming title to it?

"*A.* That he owns it? Then that would mean that I would have to get mine all surveyed to see whether I had 40 acres.

"*Q.* Well, it might, yes.

"*A.* That's what I can't—

"*Q.* What I am getting at is: Have you intended all these years to claim something that you did not own as your own?

"*A.* Why, no.

"*Q.* You intended only to claim what was your own, and you thought it was to that line?

"*A.* That's right."

A somewhat similar situation was presented in *Arduino* v. *City of Detroit,* 249 Mich 382. There it

appears that the plaintiffs' predecessor in title who, it was claimed, had initiated adverse holding of land to which he did not have title, had enclosed said land and with it a narrow strip lying outside the subdivision in which plaintiffs' lot and the adjacent property claimed by adverse possession was located. The prior owner, testifying as a witness in the plaintiffs' behalf, stated in substance that it was not his intention to enclose more than was shown on the plat of said subdivision. Based on this admission, this Court held that (p 387):

"It is essential to adverse possession by one who has no title that the occupancy be with intention to claim title. As there was no such intention in this case as to parcel D, the possession was not adverse."

In accord with the above holding is the statement in *Warner* v. *Noble,* 286 Mich 654, 660, that:

"Where the possession is up to a fixed boundary under a mistake as to the true line and the intention of the parties is to hold only to the true line, such possession is not hostile and will not ripen into title, 2 CJS, pp 519, 632."

For the above reasons we are in accord with the holding of the trial court that plaintiffs did not on the trial establish title by adverse possession to the tract of land in question. The decree entered properly denied relief on that basis.

This brings us to the consideration of plaintiffs' claim that a fence located along the north line of the 6-acre tract had been established by acquiescence as the boundary line. The proofs show that the fence had been in existence for many years, its construction antedating the division of the Alm farm. It may not be assumed that it was constructed in the first instance with any thought in mind that it should serve as a boundary, or line fence, as between subse-

quent grantees of the property. There is nothing to suggest any dispute as between Freedland and defendants, or between the parties to the present case, with reference to the location of the boundary line until 1953 when each procured a survey, presumably for the purpose of determining where the actual boundary line was located. The record does not indicate that until shortly prior to the bringing of the case at bar there was any controversy between parties in interest as to the location of the dividing line between their properties, nor do we find any evidence in the record to support a claim that there was an agreement that the fence in question should be regarded as the boundary between the farms of plaintiffs and defendants.

In *Phelps* v. *Brevoort,* 207 Mich 429, it was held, citing the earlier case of *Olin* v. *Henderson,* 120 Mich 149, that:

"To establish a boundary line by agreement and acquiescence, not only must there have been an express agreement, and monuments erected and acquiesced in, but a doubt or controversy must have existed as to the true line; otherwise the statute (CL 1915, § 11975) prohibiting the conveyance of land by parol renders the agreement inoperative." (Syllabus 1.)

The facts in the instant case do not support plaintiffs' claim that the fence in question has been acquiesced in as the true boundary line between the respective properties of the parties. The essential elements necessary to support such a claim are lacking, and the trial court was correct in so holding.

The decree is affirmed. Defendants may have costs.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, BOYLES, KELLY, and BLACK, JJ., concurred.