# STATE OF MICHIGAN

# COURT OF APPEALS

P. E. K. INVESTMENTS, L.L.C.,

        Plaintiff/Counter-Defendant-
        Appellant/Cross-Appellee,

v

RANDY D. BRANDENBURG and LINDA S.
BRANDENBURG,

        Defendants/Counter-Plaintiffs-
        Appellees/Cross-Appellants.

UNPUBLISHED
October 8, 2015

No. 321579
Wayne Circuit Court
LC No. 12-008098-CZ

Before: BORRELLO, P.J., and JANSEN and OWENS, JJ.

PER CURIAM.

Plaintiff P. E. K. Investments, L.L.C., appeals as of right the trial court's order granting defendants' motion for summary disposition with respect to all of plaintiff's claims, granting defendants' motion for summary disposition with respect to defendant's counter-claim for adverse possession, and quieting title to disputed property in favor of defendants. Defendants cross-appeal the trial court's denial of their request for sanctions under MCR 2.114(D) and MCL 600.2591. We affirm the trial court's summary disposition orders, reverse in part the trial court's denial of sanctions with respect to plaintiff's tortious interference and conversion claims, and remand for determination of an appropriate award of sanctions.

## I. FACTS AND PROCEEDINGS

In December 2010, plaintiff purchased three adjacent parcels of vacant property, commonly known as 51300 West Seven Mile Road, in Northville. When plaintiff attempted to sell the property, it discovered that improvements to defendants' adjacent property, commonly known as 9060 Napier Road, encroached onto the 51300 Seven Mile property. A portion of defendants' garage, which had been extended from a two-car garage to a three-car garage in 1978, and the accompanying driveway both encroached onto the 51300 Seven Mile property (the "disputed area"). In addition, defendants had removed a shed that their predecessors had constructed in the disputed area, but continued to use the location for a sitting area. Defendants and their predecessors had continuously maintained and landscaped the disputed area since at least 1978. Plaintiff brought this action to quiet title to the disputed area, and defendants brought a counter-complaint asserting ownership to the disputed area pursuant to the doctrines of adverse

-1-

possession and acquiescence. Defendants filed motions for summary disposition with respect to plaintiff's claims and their counterclaim. The trial court granted the motions pursuant to MCR 2.116(C)(10), and quieted title to the disputed area in favor of defendants pursuant to the doctrine of adverse possession. Defendants also requested sanctions under MCR 2.114(E) and MCL 600.2591, on the ground that plaintiff's claims for conversion, tortious interference with a contract or business expectancy, and trespass were frivolous. The trial court summarily denied defendants' request for sanctions.

## II. PLAINTIFF'S APPEAL

"In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id.*, quoting *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). When deciding a motion for summary disposition, the trial court may not assess credibility, weigh evidence, or resolve factual disputes. If material evidence conflicts, summary disposition under MCR 2.116(C)(10) is not appropriate. *Pioneer State Mut Ins Co*, 301 Mich App at 377. Only "substantively admissible evidence actually proffered relative to a motion for summary disposition" properly may be considered by the court. *Id.*

"In order to establish a claim of adverse possession, the claimant must provide 'clear and cogent proof that possession has been actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years.' " *Canjar v Cole*, 283 Mich App 723, 731; 770 NW2d 449 (2009), quoting *Kipka v Fountain*, 198 Mich App 435, 439; 499 NW2d 363 (1993). "The 15-year period begins when the rightful owner has been disseised of the land." *Canjar*, 283 Mich App at 731; see also MCL 600.5829 (a claim to recover land accrues at the time of disseisin). " 'Disseisin occurs when the true owner is deprived of possession or displaced by someone exercising the powers and privileges of ownership.' " *Canjar*, 283 Mich App at 731, quoting *Kipka*, 198 Mich App at 439. The claimant must also demonstrate that her actions "were 'hostile' and 'under claim of right,' meaning that the use is inconsistent with the right of the owner, without permission asked or given, and which use would entitle the owner to a cause of action against the intruder." *Canjar*, 283 Mich App at 731-732, quoting *Wengel v Wengel*, 270 Mich App 86, 92-93; 714 NW2d 371 (2006). "The term 'hostile,' as used in the law of adverse possession, is a term of art and does not imply ill will." *Mulcahy v Verhines*, 276 Mich App 693, 702; 742 NW2d 393 (2007). "[A]dverse possession requires a showing of a claim of right or color of title." *DeGroot v Barber*, 198 Mich App 48, 50; 497 NW2d 530 (1993).

Plaintiff argues that the trial court erred in relying on the possessory periods of defendants' predecessors in interest to find that the requisite 15-year statutory period was satisfied. We disagree. "A party may 'tack' on the possessory periods of predecessors in interest to achieve th[e] fifteen-year period by showing privity of estate." *Killips v Mannisto*, 244 Mich

App 256; 624 NW2d 224 (2001). Privity can be established either "by (1) including a description of the disputed acreage in the deed . . . or (2) an actual transfer or conveyance of possession by the disputed acreage by parol statements made at the time of conveyance." *Id.* at 259 (citations omitted). See also *Siegel v Renkiewicz Estate*, 373 Mich 421, 425; 129 NW2d 876 (1964).

Defendants purchased the 9060 Napier Road property in 2003 from Robert and Susan Fraser, who in turn purchased the property in 1994 from Danny and Vicki Sherrill. In support of their motions, defendants submitted the affidavit of Robert Fraser, who averred, in pertinent part:

> 38. On August 7, 2003, we sold 9060 Napier to Randy Brandenburg and Linda Brandenburg (hereinafter the "Brandenburgs").
>
> * * *
>
> 42. We disclosed to the Brandenburgs that the garage, driveway and shed encroached onto the adjoining property.
>
> 43. We advised the Brandenburgs that we had always treated the garage, driveway shed and area identified in **Exhibit C** as our own property and that there had never been any problem.
>
> 44. When we transferred 9060 Napier to the Brandenburgs we intended that the Brandenburgs be able to use the garage, driveway, shed and area identified in **Exhibit C** as we had done in the past.

Defendant Randy Brandenburg also submitted an affidavit in which he similarly averred:

> 9. Robert Fraser disclosed to me that the garage, driveway and shed encroached onto the adjoining property (hereinafter "51300 W. 7 Mile") based upon the 1994 survey.
>
> 10. Robert Fraser advised me that he had always treated the garage, driveway shed and area identified in **Exhibit D** as his own property and that there had never been any problem.
>
> 11. When we purchased 9060 Napier from the Frasers we believed that we would be able to continue to use the garage, driveway, shed and area identified in **Exhibit D** in the same manner as Robert Fraser had done in the past based on the information contained in the purchase agreement, seller disclosure statement and oral representations of Robert Fraser.

Defendants also submitted the affidavit of Danny Sherrill which, although not essential to establishing the requisite 15-year statutory period, was probative of the history of the owners of 9060 Napier treating the disputed area as their property. Sherrill averred that he built the garage addition in 1978, and also improved a shed that was already situated on the disputed area by replacing the shed's wooden floor with a poured concrete slab. Sherrill also installed an underground septic field that encroached into the disputed area. When he transferred ownership

-3-

of the property to the Frasers in 1994, he "intended that the Frasers be able to use the garage, driveway, shed, septic field and area inside of the boundary lines . . . as we had done in the past."

These affidavits establish that title to 9060 Napier passed from the Sherrills, to the Frasers, and to defendants, with the understanding that ownership of 9060 Napier included the garage, driveway, and shed in the disputed area, although that area was not within the property description stated in the deed. This history establishes that the parties to the conveyances understood, through parol references at the time of conveyance, that the disputed area was part of 9060 Napier. *Siegel*, 373 Mich at 425. Thus, the possessory periods of defendants and their predecessors may be tacked to satisfy the requisite 15-year statutory period.

We also disagree with plaintiff's argument that the statutory 15-year period was not satisfied because a new accrual period begins each time property is transferred to a new owner. MCL 600.5829(1) provides that "[w]henever any person is disseised, his right of entry on and claim to recover land accrue at the time of *his disseisin*." Plaintiff contends that the phrase "*his disseisin*" means that a new accrual period begins each time the property is transferred to a new owner, because a previous owner's disseisin is distinct from a successive owner's disseisin. Plaintiff argues, therefore, that it could not have been disseised before it acquired the property in 2010, or before it learned of defendants' encroachment in 2012. Plaintiff's reliance on *Kipka*, 198 Mich App 435, in support of this argument is misplaced. Although this Court in *Kipka* concluded that the requisite 15-year statutory period was not established in that case, it did not construe the phrase "his disseisin" in MCL 600.5829(1) to mean that the 15-year period re-commences on each date that a new owner acquires property. The Court stated that "[d]isseisin occurs when the true owner is deprived of possession or displaced by someone exercising the powers and privileges of ownership." *Kipka*, 198 Mich App at 439. In this case, the submitted evidence demonstrated that defendants' predecessors began exercising the powers and privileges of ownership of the disputed area when they constructed a garage, driveway, and shed on the property, and maintained the landscaping in that area, which began well more than 15 years before plaintiff purchased the property, thereby trigging the accrual period. Plaintiff's reliance on *Adams v Adams (On Reconsideration)*, 276 Mich App 704; 742 NW2d 399 (2007), is also misplaced. That case is distinguishable because it involved a situation involving disseisin "under color of deed," as opposed to actual physical possession. *Id.* at 719-720.

We reject plaintiff's argument that an affidavit submitted by plaintiff's attorney, describing the contents of a conversation he had with Norman Ross, who resided at 51300 Seven Mile Road from 1978 to 1989, was sufficient to establish a genuine issue of material fact regarding the hostility element of adverse possession. According to plaintiff's counsel, Ross informed him that he consented to Danny Sherrill's installation of a septic field on 51300 Seven Mile Road if the field was installed two feet below the surface and did not interfere with the Ross' use of their land, which they were "not giving" to Sherrill. The affidavit is not competent evidence because it is based on Ross's hearsay statements, MRE 801(c), and hearsay is not

substantively admissible absent an exception.[1]  Although plaintiff asserts that Ross's statements are admissible under MRE 804(b)(7), the "catch-all" exception for statements by an unavailable witness, plaintiff did not assert this exception below, and it did not explain what efforts were made to locate Ross to either procure his attendance or have him execute his own affidavit. Plaintiff's failure to establish Ross's unavailability under MRE 804(a), and its failure to provide notice to defendants that it intended to rely on the catch-all exception to support the introduction of Ross's statements, preclude its reliance on this exception to establish the admissibility of Ross's statements.  Furthermore, the affidavit indicates that Ross resided at 51300 Seven Mile Road only until 1989, and that he only consented to an underground septic field.  It does not indicate that he consented to the above-ground improvements or to the other uses of the disputed area by the Sherrills, and he could not have consented to the encroachments and continued use of the disputed area by the Sherrills, the Frasers, and defendants after 1989.  For all of these reasons, the trial court did not err in determining that the affidavit submitted by plaintiff's counsel was insufficient to establish a genuine issue of material fact regarding the hostility element of adverse possession.

Plaintiff also argues that the "hostility" element was not satisfied because the adjoining property owners "enjoyed a peaceful coexistence."  As previously indicated, "[t]he term 'hostile,' as used in the law of adverse possession, is a term of art and does not imply ill will." *Mulcahy*, 276 Mich App at 702.  Plaintiff asserts that defendants did not erect a fence or barrier to overtly declare their intent to occupy and possess the disputed area.  While construction of a fence or other barrier are means of demonstrating an overt act of possession, see *Davids v Davis*, 179 Mich App 72, 84; 445 NW2d 460 (1989), and *Wood v Denton*, 53 Mich App 435; 219 NW2d 798 (1974), they are not the exclusive means of establishing hostile possession.  As indicated, the hostility element requires use "inconsistent with the right of the owner, without permission asked or given, and which use would entitle the owner to a cause of action against the intruder." *Canjar*, 283 Mich App at 731-732.  The evidence that defendants and their predecessors erected a shed and portions of a driveway and garage on the disputed portion of the 51300 Seven Mile property, and maintained the landscaping in that area, without having sought or received permission, was sufficient to establish the element of hostility.

Plaintiff also argues that defendants' possession of the disputed area was not sufficiently open and notorious to satisfy the requirements of adverse possession.  Plaintiff relies on the affidavit of Issam Kaoud, who owned the 51300 Seven Mile Road property before plaintiff. Kaoud averred that no encroachments were visible to him, and that he did not consent to the construction of the garage or shed on his property.  It is not disputed that there was a physical encroachment onto the 51300 Seven Mile Road property.  The fact that Kaoud may not have recognized the encroachment or taken action against it is immaterial as long as the encroachment was "so open, visible, and notorious as to raise the presumption of notice to the world that the right of the true owner is invaded intentionally, and with the purpose to assert a claim of title

---

[1] Moreover, absent certain enumerated circumstances, none of which apply here, an attorney "shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." MRPC 3.7.

adversely to his, so that if the true owner remains in ignorance it is his own fault." *Ennis v Stanley*, 346 Mich 296, 301; 78 NW2d 114 (1956). The affidavits of defendant Randy Brandenburg, and his predecessors Robert Fraser and Danny Sherrill, establish that the garage, driveway, and shed were open and visible, and undisputedly encroached onto the 51300 Seven Mile property. While plaintiff correctly observes that intermittent or occasional uses of land ordinarily will not suffice to establish continuous, actual, open, or notorious possession of property, see *Duck v McQueen*, 263 Mich 325; 248 NW 637 (1933), the intrusions in this case involved permanent physical intrusions onto the 51300 Seven Mile Road property. That possession would have provided notice to the owners of the 51300 Seven Mile property that the encroachment and occupancy were inconsistent with the owner's property rights, and would have entitled the owner to a cause of action against the intruder. Any ignorance of the encroachments, or their location on the 51300 Seven Mile Road property, does not defeat defendants' claim of adverse possession. *Ennis*, 346 Mich at 301.

Plaintiff asserts that the submitted evidence failed to establish that defendants and their predecessors regularly conducted activities such as mowing the grass, racing mini-bikes, or gardening in the disputed area. Defendants presented evidence that they and their predecessors performed activities such as gardening, maintaining the landscape, and engaging in recreational activities on the disputed property. Although plaintiff asserts that defendants did not specify the regularity to which these activities were conducted, it was not just these activities that established defendants' claim for adverse possession. The evidence established that defendants and their predecessors erected a garage, shed, and driveway on the 51300 Seven Mile property, and the presence of these structures was continuous and regular. The landscape, gardening, and recreational uses were incidental to these other possessory acts of ownership, which established regular and continued use beyond mere trespass.

In addition, the fact that the true owners' children or other members of the public sometimes engaged in recreational activities on the disputed property does not defeat the exclusivity requirement for adverse possession. Exclusive possession means that the adverse possessor does not occupy the land concurrent with the true owner or share possession in common with the public. *Hamilton v Weber*, 339 Mich App 31, 53-54; 62 NW2d 646 (1954). However, occasional occupancy by others does not suffice to defeat a claim of exclusivity. *Waisanen v Superior Twp*, 305 Mich App 719, 732; 854 NW2d 213 (2014). Moreover, defendants' adverse possession claim was not based on their occupancy of the disputed property solely for recreational activities. Rather, it was based on evidence that they and their predecessors erected physical structures and improvements on the property, and the evidence showed that their occupancy of the disputed area for those purposes was exclusive.

Plaintiff also argues that defendants' failure to pay the property taxes for the disputed area undermines their claim of adverse possession. Payment of property taxes is only one factor to consider in determining a possessor's intent to claim title to property. *Seifferlein v Foerster*, 218 Mich 179, 186; 187 NW 602 (1922). In *Seifferlein*, the Court considered that factor in conjunction with evidence that the defendant's occupancy of the plaintiff's property occurred pursuant to a permissive arrangement. This case is distinguishable because there is no competent evidence that the continuous occupancy of the disputed area by defendants and their predecessors was permissive. The fact that defendants and their predecessors did not pay the property taxes for the disputed area does not defeat defendants' claim for adverse possession

where the uncontested evidence otherwise established the necessary elements of adverse possession.

In sum, the submitted evidence demonstrated that there was no genuine issue of material fact regarding any of the elements necessary to establish adverse possession. Although plaintiff complains that the affidavits submitted by defendants were self-serving, the affidavits complemented other evidence showing the physical improvements to the disputed area, and established factual support for defendants' adverse possession claim. Once defendants established factual support for their claim, it was incumbent upon plaintiff to submit affidavits or other documentary evidence showing a factual issue for trial. MCR 2.116(G)(4). Plaintiff failed to meet its burden of establishing a genuine issue of fact for trial. Accordingly, the trial court did not err in granting defendants' motion for summary disposition on their counter-claim for adverse possession.

Plaintiff also argues that the trial court erred in defining the scope of the property awarded to defendants in support of their adverse possession claim. Defendants included a legal description of the disputed property in their counter-complaint. Plaintiff never challenged this description, offered a counter-description, or otherwise argued that the size of the disputed area was actually less than claimed by defendants. Because plaintiff did not raise this issue below, appellate relief is foreclosed absent a showing of plain error affecting plaintiff's substantial rights. *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 541; 854 NW2d 152 (2014), lv gtd 497 Mich 988 (2015). In its brief on appeal, plaintiff states only that "a very small portion of a garage and a small portion of an underground septic field encroach upon P.E.K.'s land," and refers to "undisputed *de minimis* encroachments of about 300 square feet (5-by-50-foot strip of land on which the encroachments exist) . . . ." Plaintiff offers no comparison between the size of the disputed area awarded to defendants and the area actually affected by the encroachment. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003). Given plaintiff's failure to challenge the scope of the disputed area in the trial court, and its failure to adequately address this issue on appeal, plaintiff has failed to meet its burden of establishing a plain error.

Finally, plaintiff has not established any entitlement to relief because the trial court failed to serve its counsel with the summary disposition order within seven days as required by MCR 2.602(D)(1). Although plaintiff asserts that it was deprived of the opportunity to file a motion for reconsideration within the 21-day period provided by MCR 2.119(F)(1), it is undisputed that plaintiff received the summary disposition order within the 21-day period. Indeed, plaintiff timely filed its claim of appeal within that 21-day period. Furthermore, plaintiff does not articulate any ground for reconsideration that might have achieved a favorable outcome, or any ground for reconsideration that it could not have asserted in this Court. Accordingly, plaintiff has failed to establish any entitlement to relief with respect to this issue. See MCR 2.613(A) ("an error or defect in anything done or omitted by the court . . . is not ground for . . . disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice").

Defendants argue on cross-appeal that the trial court erred in denying their request for sanctions under MCR 2.114 and MCL 600.2591. Defendants sought sanctions below only on the ground that plaintiff's claims were frivolous. They did not argue below, as they do on appeal, that they were also entitled to sanctions because plaintiff asserted a frivolous defense to their counter-complaint. Accordingly, this issue is preserved only with respect to the claims in plaintiff's complaint.

The trial court did not explain its reasons for denying defendants' request for sanctions. It merely stated, "after reviewing the parties' briefs and accompanying documentary evidence, the Court will deny [defendants'] request for sanctions." This Court reviews for clear error both a trial court's determination whether to impose sanctions under MCR 2.114, *Guerro v Smith*, 280 Mich App 647, 677; 761 NW2d 723 (2008), and a trial court's finding whether an action is frivolous. *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). A decision is clearly erroneous if, although there is evidence to support it, the reviewing Court is left with a definite and firm conviction that a mistake was made. *Id.* Once a court determines that a violation of MCR 2.114(D) has occurred, or that a claim is frivolous under MCL 600.2591, sanctions are mandatory and the court does not have discretion to forego sanctions. *Guerrero*, 280 Mich App at 678 (violation of MCR 2.114(D)); *Cvengos v Farm Bureau Ins*, 216 Mich App 261, 268; 548 NW2d 698 (1996) (frivolous claim). If sanctions are warranted, the determination of an appropriate award of sanctions is within the trial court's discretion. *Vittiglio v Vittiglio*, 297 Mich App 391, 408; 824 NW2d 591 (2012).

MCR 2.114 provides, in pertinent part:

> **(D) Effect of Signature.** The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that
>
> (1) he or she has read the document;
>
> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> **(E) Sanctions for Violation.** If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

**(F) Sanctions for Frivolous Claims and Defenses.** In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages.

MCR 2.625(A)(2) provides:

*Frivolous Claims and Defenses.* In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591.

MCL 600.2591 provides, in pertinent part:

(1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

(b) "Prevailing party" means a party who wins on the entire record.

To determine whether a claim is frivolous, the claim or defense must be evaluated at the time it was made. *In re Costs & Attorney Fees,* 250 Mich App 89, 94; 645 NW2d 697 (2002). The court must examine "the particular facts and circumstances of the claim involved." *Id.* at 95. The purpose of imposing sanctions is "to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *BJ's & Sons Constr Co, Inc v Van Sickle*, 266 Mich App 400, 405; 700 NW2d 432 (2005) (internal quotations and citation omitted). However, sanctions should not be used to "penalize[ ] a party whose claim initially appears viable but later becomes unpersuasive." *Louya v William Beaumont Hosp,* 190 Mich App 151, 163; 475 NW2d 434 (1991). Additionally, "[n]ot every error in legal analysis constitutes a frivolous position.

Moreover, merely because this Court concludes that a legal position asserted by a party should be rejected does not mean that the party was acting frivolously in advocating its position." *Kitchen*, 465 Mich at 663.

We agree with defendants that the trial court clearly erred in failing to find that plaintiff's claim for conversion was frivolous. The factual basis for plaintiff's conversion claim was that defendants converted plaintiff's real property. It is well established that a claim for conversion does not lie with respect to real property. *Eadus v Hunter,* 268 Mich 233, 237; 256 NW 323 (1934); *Embrey v Weissman,* 74 Mich App 138, 143; 253 NW2d 687 (1977). Rather, conversion involves " " 'any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.' " " See *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, ___ Mich ___; ___ NW2d ___ (2015) (Docket No. 148909), slip op at 9, quoting *Thoma v Tracy Motor Sales, Inc*, 360 Mich 434, 438; 104 NW2d 360 (1960), quoting *Nelson & Witt v Texas Co*, 256 Mich 65, 70; 239 NW 289 (1931). There is no arguable legal basis for applying the tort of conversion to the alleged wrongful use of plaintiff's real property. Plaintiff's counsel should have known that this legal position was "devoid of arguable legal merit." MCL 600.2591(3)(a)(*iii*). By signing plaintiff's complaint, counsel signed a document that he should have known was not "warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law," MCR 2.114(D)(2), and that was "devoid of arguable legal merit." MCL 600.2591(3)(a)(*iii*). Therefore, the trial court clearly erred by denying sanctions for the conversion claim.

Defendants also argue that plaintiff's claim for tortious interference with a contract or business opportunity was frivolous. The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant. *Knight Enterprises v RPF Oil Co*, 299 Mich App 275, 279-280; 829 NW2d 345 (2013). Michigan also recognizes the tort of interference with a business relationship or expectancy. Proof of that tort requires "the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff." *Badiee v Brighton Area Sch,* 265 Mich App 343, 365-366; 695 NW2d 521 (2005) (citation omitted). Defendants argue that plaintiff's tortious interference claim was frivolous because plaintiff's president, Peter Khoury, admitted in his deposition that the prospective purchasers of plaintiff's property did not breach the purchase agreement. However, it is undisputed that they did not consummate the purchase agreement, and this fact may satisfy the element of "a breach or termination of the relationship or expectancy."

But "[t]o establish tortious interference, a plaintiff must show that the defendant unjustifiably instigated a breach of contract." *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 131; 649 NW2d 808 (2002). This requires a showing of "the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Id.* (citation and internal quotations omitted). "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *Id.* Here, plaintiff relied on defendants' refusal to resolve the property dispute by paying plaintiff $5,000 in exchange for an easement or modification of the boundary line. Plaintiff

characterized defendants' conduct as unreasonable and attempted extortion. From plaintiff's perspective, defendants did not have a colorable claim for adverse possession, but the pertinent question is whether plaintiff could reasonably believe that defendants' position was so tenuous that merely asserting it constituted per se wrongful conduct or malicious and unjustified conduct. Any such belief was not reasonable. Moreover, there was no evidence that defendants acted with the intent of interfering with plaintiff's business expectancy. Defendants were merely seeking to preserve the property rights that they and their predecessors had exercised for more than 30 years, well before plaintiff's business expectancy arose. Plaintiff had no objective basis for believing that defendants acted with any motive other than to protect their own asserted property interest. Thus, there was no reasonable basis for believing that the tortious interference claim was well grounded in fact or warranted by existing law. That claim was also frivolous, and the trial court clearly erred by denying sanctions with respect to the claim.

We are unable to conclude, however, that plaintiff's trespass claim was frivolous. Defendants argue that plaintiff's claim for trespass was frivolous because plaintiff should have known that defendants did not construct the garage, shed, and septic field that were located on the 51300 Seven Mile property when defendants purchased the property. Defendants maintain that they could not be held liable for trespass based on acts perpetrated by their predecessors in title, because Michigan law does not recognize a "continuing violations" doctrine for trespass.

In *Terlecki v Stewart*, 278 Mich App 644; 754 NW2d 899 (2008), the plaintiff brought trespass and related claims arising from the defendants' land modifications, which caused flooding onto the plaintiff's property. The modifications were made more than three years before the plaintiff's complaint was filed, but flooding continued into the three-year period. *Id*. at 647-648. Citing MCL 600.5805, this Court held that the plaintiffs' action was untimely pursuant to MCL 600.5805(10), which prescribes a three-year limitations period for actions to recover damages for injury to property. *Id*. at 652. This Court held that the "continuing violations" doctrine was contrary to the language of MCL 500.5805, and therefore " 'has no continued place in the jurisprudence of this state.' " *Terlecki*, 278 Mich App at 654-655, quoting *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 290; 596 NW2d 646 (2005). But this Court's review of caselaw discussing the continuing wrong doctrine included a reference to *Defnet v Detroit*, 327 Mich 254; 41 NW2d 539 (1950), in which our Supreme Court held that the presence of an active sewer beneath the plaintiffs' lands constituted a trespass. The *Defnet* Court further held that the presence of the sewer was a "continuing wrongful act[]," and the plaintiffs' claim was not barred by the statute of limitations. *Id*. at 259.

In *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 288; 769 NW2d 234 (2009), this Court held that the Supreme Court's decision in *Garg* "completely and retroactively abrogated the common-law continuing wrongs doctrine in the jurisprudence of this state, including in nuisance and trespass cases." In *Froling*, the plaintiff's trespass and nuisance claims arose from the defendant's conduct in modifying the defendant's property in a way to cause excessive water run-off and flooding onto the plaintiff's property. *Id*. at 267-268. The modifications were made in 1989, the flooding began in 1989, and the most severe floods occurred in 1996, 1997, 2001, 2004, and 2005. *Id*. at 268. This Court concluded that the plaintiff's arguments regarding the limitations period "fail to the extent that it relies on [the continuing wrongs] doctrine to save its claims." *Id*. at 288.

This case is distinguishable from *Froling*, which did not involve a permanent, physical intrusion onto the land. The alleged trespass in this case does not involve the continuing effects of a past intrusive act, but rather a continuing physical intrusion that remained on the 51300 Seven Mile property. Thus, abrogation of the common-law continuing violations doctrine did not clearly preclude plaintiff's trespass claim, which was based on an existing permanent, physical intrusion onto plaintiff's property. Accordingly, plaintiff's trespass claim was not devoid of arguable legal merit.

Defendants argue that plaintiff's reliance on *Weisel v Hobbs*, 138 Neb 656; 294 NW 448 (1940), in support of its defense that defendants were estopped from pursuing a claim for adverse possession was frivolous because our Supreme Court rejected estoppel as a basis for enforcing an oral contract to transfer an interest in real property in *Kitchen*, 465 Mich 564. *Weisel* involved a dispute between neighboring property owners over a tree situated on the boundary line of the parties' property and the plaintiff's garage's encroachment over the boundary line. The defendants alleged that before they bought the property, the plaintiff informed them that the plaintiff's garage extended onto the defendants' property by a few inches. According to the defendants, the plaintiff advised them that "any time the owner of this property demands, I will move it; it will be some inconvenience, but I will move it." *Id.* at 452. The Nebraska Supreme Court held:

> It is a well-settled rule that admissions of a party against interest, made with reference to, and pertinent to, the issues being tried, are admissible in evidence against such party, and proof thereof will work an estoppel in pais. [*Id.*]

The Nebraska Court held that the plaintiffs' "disclaimer of title prior to the running of limitations precludes his acquisition of title by adverse possession unless he thereafter claims and holds for the statutory period." *Id.*. The court held that the encroachment of the plaintiff's garage onto the defendants' property "was but a permissive use of the land," which "can never ripen into title by possession until after such change of position has been brought home to adverse party." *Id.* at 453.

In *Kitchen*, 465 Mich 654, the plaintiff and the defendant were brothers who jointly operated a potato farm. Part of the defendant's property was used for growing potatoes. The plaintiff bought out the defendant's interest and claimed the right to use the irrigation system on the defendant's land. The plaintiff argued that the defendant's oral permission for the irrigation system to cross his land "gave rise to an irrevocable license by estoppel for the use of the land in question." *Id.* at 656-657. The Supreme Court held that "the statute of fraud bars plaintiffs' claim for an interest in defendants' land based on an oral promise and reliance by plaintiffs" because "an 'irrevocable license' by estoppel cannot be created in Michigan on the basis of an oral promise because recognizing such a conveyance would violate the statute of frauds." *Id.* at 658. The defendant moved for sanctions pursuant to MCR 2.114 on the ground that the plaintiffs' estoppel claim was frivolous. The Supreme Court held that sanctions were not warranted, because the issue "was not easily resolved," and there was "no authority in Michigan that clearly and unequivocally addresses whether an oral license can become irrevocable by estoppel." *Id.* at 662.

We are not persuaded that *Kitchen* is irreconcilable with *Weisel*. The issue in *Weisel* was whether the plaintiff's oral acknowledgment that the garage encroached onto the defendants' property and his oral offer to move the garage at the defendants' request, negated the plaintiff's claim of adverse possession. The Nebraska Court explained that in these circumstances, the garage's continuing presence on the defendant's land "was but a permissive use of the land," which "can never ripen into title by possession until after such change of position has been brought home to adverse party." *Id.* at 452-453. The salient issue in *Weisel* was the plaintiff's satisfaction of the hostility element of adverse possession. The plaintiff in *Weisel* was not asserting the right to an interest in real property based on an oral agreement, but instead was presenting a claim to establish ownership through adverse possession, supported by her allegation that she used the property without permission. The principle of estoppel involves "some circumstances . . . wherein justice requires that a person be treated *as though* he had waived a right where he has done some act inconsistent with the assertion of such right and without regard to whether he knew he possessed it." *Reed Estate v Reed*, 293 Mich App 168, 177; 810 NW2d 284 (2011). This is a distinct consideration from the *Kitchen* Court's reliance on the statute of frauds. Accordingly, plaintiff's reliance on *Weisel* is not void of arguable legal merit. MCL 600.2591(3)(a)(*iii*).

However, *Weisel* is not relevant to the facts of this case. The plaintiff's offer in *Weisel* to move the garage years before his adverse possession claim ripened is distinguishable from defendants' alleged agreement to pay $5,000 for an easement or for movement of the boundary line. In these circumstances, the *Weisel* plaintiff's statement may be viewed as a prospective admission that the garage's continued presence was permissive rather than hostile. In the instant case, defendants' alleged agreement to a $5,000 settlement may be construed as an attempt to avoid litigation. Although plaintiff's reliance on *Weisel* is questionable to support an argument that had no factual relevance to the principle stated in *Weisel*, we cannot conclude that it clearly qualifies as frivolous.

Lastly, although we have rejected plaintiff's argument that the 15-year statutory period for adverse possession did not begin to run until plaintiff acquired title to the 51300 Seven Mile property, we are not persuaded that plaintiff acted frivolously in advocating its position. Despite our conclusion that plaintiff's argument is not supported by this Court's decision in *Kipka*, 198 Mich App 435, we note that *Kipka* did not squarely address the issue, apparently because it was not raised. Thus, plaintiff's argument does not clearly qualify as frivolous.

Accordingly, defendants have not established that they are entitled to sanctions with respect to their unpreserved argument that plaintiff's defenses to their counter-claim were frivolous.

In sum, we conclude that two of plaintiff's claims, conversion and tortious interference, were frivolous, and therefore, the trial court clearly erred in denying sanctions with respect to those claims. However, defendants have failed to establish that plaintiff's trespass claim, or the defenses plaintiff asserted to defendants' counterclaims, were frivolous. Accordingly, we remand for determination of an appropriate award of sanctions associated with plaintiff's conversion and tortious interference claims.

Affirmed in part, reversed in part, and remanded for further proceedings regarding an appropriate award of sanctions in accordance with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Kathleen Jansen
/s/ Donald S. Owens